FILED
DALLAS COUNTY
5/22/2019 12:48 AM
FELICIA PITRE
DISTRICT CLERK

Christi Underwood

**CAUSE NO. DC-19-07239**

| | | |
|---|---|---|
| **RONALD BURKE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| **CITY OF FORT WORTH, TEXAS,** | § | |
| | § | |
| ***Defendant.*** | § | **DALLAS COUNTY, TEXAS** |

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Ronald Burke (hereafter "Plaintiff" or "Burke"), and files this his Original Petition against the City of Fort Worth, Texas, (hereafter "Defendant" or "City") and for cause of action would show the following:

## I. DISCOVERY CONTROL PLAN AND NOTICE OF RELATED CASE

1. Plaintiff intends to conduct discovery in this matter under Level 3 pursuant to Tex. R. Civ. P. 190.4.

2. Pursuant to Local Rule 1.06, Plaintiff hereby states that a related case is pending involving similar claims, styled *Birchett v. City of Fort Worth*, Texas, No. DC-19-06941, pending in the 162nd District Court for Dallas, County, Texas.

## II. CLAIMS FOR RELIEF

3. Burke seeks monetary relief in excess of $1,000,000.00 including damages of any kind, penalties, court costs, expenses and pre-judgment and post-judgment interest.

**III.**
**PARTIES**

4. Burke is an individual residing in Tarrant County, Texas.

5. Defendant City of Fort Worth, Texas, is a public, local government entity established and organized under, and pursuant to, the laws of the State of Texas, with authority to sue and be sued in its own name, and may be served by serving its Mayor, Betsy Price, at Fort Worth City Hall, 200 Texas Street, Fort Worth, Texas 76102, or wherever she may be found.

**IV.**
**JURISDICTION**

6. Jurisdiction is proper in this Court because this case is brought under Tex. Gov't Code § 554.001, *et seq*., commonly known as the Texas Whistleblower Act.

7. Tex. Gov't Code § 554.007(b) provides that Whistleblower causes of action must be brought in state district court, and Plaintiff's damages exceed the Court's minimum jurisdictional limits.

8. Plaintiff has fulfilled the jurisdictional requirements under § 554.006 of the Texas Whistleblower Act. On March 22, 2019, Plaintiff's attorney, Stephen A. Kennedy, sent a letter on Plaintiff's behalf invoking the applicable grievance procedure to City Attorney Sarah J. Fullenwider. *See* Exhibit A.

9. Today is the 61st day since Plaintiff began the grievance procedure and no final decision has been rendered by the City in response to Plaintiff's March 22, 2019 letter. Accordingly, Plaintiff hereby elects to terminate the grievance procedure and file suit under the Texas Whistleblower Act, as permitted under § 554.006(d)(2) thereof.

**V.**
**VENUE**

10. Venue is proper in this Court because, at all times material to this case, Burke was an employee of the City, a local government entity.

11. Burke resides in Tarrant County, and the facts giving rise to Burke's cause of action arose in Tarrant County, Texas.

12. Dallas County and Tarrant County are in the same geographic area and have established a "council of governments or other regional commission" within the meaning of Tex. Local Gov't Code Ann. § 391. This council of governments is entitled North Central Texas Council of Governments ("NCTCOG").

13. Tex. Gov't Code Ann. § 554.007(b) allows an employee of a local government entity to sue in a district court of any county within NCTCOG.

14. Both Tarrant County and Dallas County are part of NCTCOG and, therefore, venue is proper in this Dallas County District Court.

**VI.**
**INTRODUCTION**

15. This is a whistleblower case brought pursuant to § 554.002 of the Texas Government Code.

16. In his capacity as Assistant Director, Information Technology Solutions (ITS), Burke reported that the City was not in compliance with Federal Criminal Justice Information Security regulations identified herein.

17. Burke reported the CJIS violations to William Birchett, who served as the City's Local Agency Security Officer ("LASO") and held the title Senior Information Technology Solutions (ITS) Manager. Burke also reported the violations

to Kevin Gunn, the City's Acting Chief Financial Officer, to Roger Wright, the City's Acting Chief Technology Officer, and to others reasonably expected to have authority to investigate and enforce violations of law.

18.     After Burke reported the violations of law, the City, through Gunn and Wright, retaliated by (1) reassigning all of Burke's direct reports to a different manager on January 2, 2019; (2) issuing a permanent memorandum to Burke's personnel file claiming "inadequate management" on January 2, 2019 (*see* Exhibit B); (3) issuing a "pre-decision meeting notice" stating that "the Information Technology Solutions Department is seriously considering the termination of your employment" on January 11, 2019 (*see* Exhibit C); and (4) issuing a second "pre-decision meeting notice" while Burke was on FMLA leave on January 18, 2019 (*see* Exhibit D).

19.     Items (1) through (4) above constitute adverse employment actions that were initiated less than 90 days after Burke made his whistleblower reports to law enforcement. Each act is a separate violation of the Texas Whistleblower Act, codified in § 554.002 of the Texas Government Code.

20.     On March 22, 2019, through a letter from Burke's counsel to Sarah J. Fullenwider, Esq., City Attorney, Burke again reported that the City had not complied with Federal CJIS regulations and requested an administrative appeal of the adverse employment actions. *See* Exhibit A.

21.     In a letter dated April 3, 2019, City Attorney Kelly Albin declared that the March 22, 2019 request for administrative review constituted Burke's resignation, that the City accepted the resignation, and that Mr. Burke's paid leave

would terminate upon the expiration of Burke's FMLA-protection period. *See* Exhibit E.

22.     The April 3, 2019 letter from Albin is, in effect, a termination of Burke's employment during his protected FMLA leave in retaliation for Burke reporting violations of law to her as part of an administrative appeal on March 22, 2019. Albin's April 3, 2019 letter terminating Burke's employment is a separate violation of the Texas Whistleblower Act and was made within 60 days of the March 22, 2019 whistleblower report.

23.     Accordingly, the City has the burden of proof to demonstrate that the City did not retaliate when it reassigned all of Burke's direct reports to a different manager on January 2, 2019, issued a permanent memorandum to Burke's personnel file claiming "inadequate management" on January 2, 2019, issued a "pre-decision meeting notice" stating that the Information Technology Solutions Department was seriously considering the termination of Burke's employment on January 11, 2019, issued a second "pre-decision meeting notice" while Burke was on FMLA leave on January 18, 2019; and terminated Burke's employment through the April 3, 2019 letter. Tex. Gov't Code Ann. § 554.004 (a).

## VII.
## MATERIAL PREDICATE FACTS

24.     Burke began his employment with the City on May 29, 2015. His job title was Assistant Director, Information Technology Solutions (ITS).

25.     Burke is an Air Force Veteran who was disabled by an explosion on May 29, 1998, while stationed at Malmstrom Air Force Base. Burke's injuries from the

explosion include migraines, a 3/4 loss of his hearing, nosebleeds, problems with equilibrium, and other issues.

26. Burke needs - and has needed since 1998 - accommodations to maintain a job. Burke spoke to Gunn about these matters and Gunn stated he required nothing more than a "heads up" when Burke needed to work from home or change his schedule.

27. By May of 2018 Burke's team of IT professionals discovered a number of violations and deficiencies with respect to cybersecurity policies and compliance. For instance, Burke's Senior ITS Manager, William Birchett, concluded that the City was ***90% non-compliant*** compared to industry standards.

28. Once Burke and his team started reporting CJIS issues in October of 2018, Gunn immediately demanded that Burke complete ADA paperwork with Al Henderson, the City of Fort Worth ADA Specialist.

29. Over the scope of his employment, Burke made concerted efforts to bring the City into compliance with cybersecurity standards.

***Burke Reports that City Employee Medical Information is Exposed***

30. Through a letter from counsel, Burke reported to the City Attorney's Office that the City's employee benefit portal remained unsecure as of March 5, 2019. The cybersecurity breach was initially reported on September 10, 2018. The City was informed that any person could access city employee names, birthdates, social security numbers, addresses, and health insurance claims. The data and benefits were available on an unsecure City server in a file that was neither password

protected nor encrypted, and accessible to anyone with internet access. *See* Exhibit F.

31. In a press release dated May 16, 2019, the City claimed that "[i]n the fall of 2018, the City addressed an employee data concern with a third-party benefit partner which was immediately resolved by the vendor with additional authentication requirements." That statement is verifiably false, as demonstrated by an email dated March 5, 2019 from Nathan Gregory, Assistant Director Human Resources Department for the City of Fort Worth, to Roger Wright, the Acting Chief Technology Officer and other city officials. In his email, Gregory admitted that "the Benefits team did not know that the old link still work[ed]" as of March 5, 2019 and that the confidential medical data of all City employees remained unsecure. *See* Exhibit G.

32. Despite the City's claim that the problem was "immediately resolved" in 2018, City employee sensitive medical data was available online to anyone with internet access through at least March 5, 2019.

***Burke Blows the Whistle on Cybersecurity Violations***

33. The Criminal Justice Information Act, codified as part of 28 U.S.C. § 534, is intended to "assure that criminal history record information wherever it appears is collated, stored, and disseminated in a manner to ensure the accuracy, completeness, currency, integrity, and security of such information and to protect individual privacy." 28 C.F.R. § 20.

34. Federal CJIS regulations require that computerized data must be properly secured to "prevent unauthorized access to such information." 28 C.F.R. § 20.21(f)(1).

35. Federal CJIS regulations further require that access to criminal history record information system facilities must be "restricted to authorized organizations and personnel," and that direct access to criminal history record information shall be available only to "authorized officers or employees of a criminal justice agency." 28 C.F.R. § 20.21(f).

36. Burke was aware that the City had previously failed CJIS audits by the State of Texas Department of Public Safety ("DPS") and by the FBI.

37. In 2013, the FBI found that the Fort Worth Police Department ("FWPD") was out of compliance with Federal CJIS regulations because the City used public facilities to transmit encrypted CJIS data. City employee Alan Girton ("Girton") was responsible for resolving the deficiency. He reported that the deficiency was resolved.

38. In 2015, the DPS found that the FWPD was ***in compliance*** with Federal CJIS regulations for "data at rest" and "data in motion." Girton was primarily responsible for presenting information regarding the City's compliance. Based on representations from Girton and other City officials, DPS approved the City's CJIS encryption techniques. In fact, the City was ***not*** in compliance in 2015 because the City did not have network architecture that included point-to-point encryption between network devices. It is unclear whether Girton knew that the City was not in compliance or simply did not understand the technological requirements. Regardless,

the City represented to DPS that it was in compliance with Federal CJIS regulations when it was not.

39.     In 2016, the FBI found that the Fort Worth Municipal Court was not in compliance with Federal CJIS regulations because the City did not use a secure connection between the City jail and the Southwest Municipal Court. The City was also cited for failure to have secure remote access. Girton reported that the City resolved the issues.

40.     In 2016 and 2017, on information and belief, the City misrepresented to DPS that the City met all of the Federal CJIS regulations in response to DPS questionnaires when it did not.

41.     In late November of 2018, the City was required to begin completing a DPS audit questionnaire used to determine whether the City was in compliance with 28 U.S.C. § 534 and 28 C.F.R. § 20.21. Burke knew that if he responded truthfully to the DPS questionnaire, the City would fail the audit.

42.     On November 19, 2018, Burke reported to the LASO, Birchett, that the City was in violation of 28 U.S.C. § 534 and 28 C.F.R. § 20.21.

43.     Burke reported to the LASO that the City did not meet Federal CJIS regulations for keeping event logs for a minimum of one year; did not meet Federal CJIS regulations concerning the personnel who accessed CJIS data; did not have network architecture that allowed for point-to-point encryption from one network device to another network device as required by Federal regulations; did not have a policy addressing personally owned or publicly accessible computers as required by Federal regulations; did not employ personal identification numbers that met CJIS

standards as required by Federal regulations; did not meet CJIS requirements for mobile devices as required by Federal regulations; did not meet Federal CJIS regulations for wireless protocols; did not meet Federal CJIS regulations that require mobile devices employ personal firewalls; and did not meet Federal CJIS regulations that require a written plan with special reporting procedures for mobile devices.

44.     Exhibits H through N reflect work performed by Burke to bring the City into compliance with Federal CJIS regulations.

45.     Among other things, the City knowingly and deliberately failed to comply with 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108, which prohibited convicted felons and persons with other disqualifying criminal convictions from accessing CJIS data. Burke had earlier reported to Gunn and Wright that the City permitted employees known to have felony convictions and other disqualifying criminal convictions to access confidential CJIS data. The City knowingly and deliberately allowed employees who were disqualified due to criminal convictions to have access to CJIS. When Burke initially reported the unauthorized access to the City, CJIS access permissions were initially removed and the disqualified employees were physically moved such that they did not have access to CJIS computers. Within less than six months, however, two employees had their CJIS access restored. Burke again reported the unauthorized access to the City, and permissions for the employees were again removed. One employee, however, retained access to CJIS due to so-called "nested permissions groups" that gave the employee, and possibly others, unauthorized access to CJIS records. Burke presented a remediation plan to Director Gunn and Acting Director Wright, who rejected it.  Burke then presented the plan to

director Wright, who also rejected it. By refusing to revoke CJIS access privileges for the disqualified employee, the City intentionally violated 28 U.S.C. § 534, 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108.

46.     Another CJIS violation that Burke included in his whistleblower report was that the City did not comply with Federal CJIS regulations that the City maintain one year of log data identifying access to CJIS records. Federal CJIS regulations require that the City maintain log records that "clearly identify both the operator and the authorized receiving agency, clearly identify the requester and the secondary recipient and take the form of a unique identifier that shall remain unique to the individual requester and to the secondary recipient throughout the minimum one (1) year retention period." 28 C.F.R. § 20.21(f)(1). The City's Computer Aided Dispatch System complied with this requirement, but other City systems that also store CJIS data do not, such as the Police Department's Gang Operations Unit, Sex Offender Operations Unit, and other unit systems.

47.     Burke included in his whistleblower report was that the City used HTTPS website encryption instead of using point-to-point encryption for devices that access CJIS data. Federal CJIS Regulations require point-to-point encryption. 28 C.F.R. § 20.21(f)(1).

48.     The Criminal Justice Information Act, codified as part of 28 U.S.C. § 534, is intended to "assure that criminal history record information wherever it appears is collated, stored, and disseminated in a manner to ensure the accuracy, completeness, currency, integrity, and security of such information and to protect individual privacy." 28 C.F.R. § 20.

49.     Federal CJIS regulations require that computerized data must be properly secured to "prevent unauthorized access to such information." 28 C.F.R. § 20.21(f)(1).

50.     Federal CJIS regulations further require that access to criminal history record information system facilities must be "restricted to authorized organizations and personnel," and that direct access to criminal history record information shall be available only to "authorized officers or employees of a criminal justice agency." 28 C.F.R. § 20.21(f).

51.     Burke was aware that the City had previously failed CJIS audits by the State of Texas Department of Public Safety ("DPS") and by the FBI.

52.     In 2016 and 2017, on information and belief, the City misrepresented to DPS that the City met all of the Federal CJIS regulations in response to DPS questionnaires when it did not.

53.     In late November, 2018, a member of Burke's team, Birchett, was required to begin completing a DPS audit questionnaire used to determine whether the City was in compliance with 28 U.S.C. § 534 and 28 C.F.R. § 20.21. Burke and Birchett both knew that if Birchett responded truthfully to the DPS questionnaire, the City would fail the audit.

54.     On November 19, 2018, Birchett provided responses to the DPS questionnaire, told the truth, and reported that the City was in violation of 28 U.S.C. § 534 and 28 C.F.R. § 20.21.

55.     In his DPS questionnaire responses, Birchett specifically reported that the City did not meet Federal CJIS regulations for keeping event logs for a minimum

of one year; did not meet Federal CJIS regulations concerning the personnel who accessed CJIS data; did not have network architecture that allowed for point-to-point encryption from one network device to another network device as required by Federal regulations; did not have a policy addressing personally owned or publicly accessible computers as required by Federal regulations; did not employ personal identification numbers that met CJIS standards as required by Federal regulations; did not meet CJIS requirements for mobile devices as required by Federal regulations; did not meet Federal CJIS regulations for wireless protocols; did not meet Federal CJIS regulations that require mobile devices employ personal firewalls; and did not meet Federal CJIS regulations that require a written plan with special reporting procedures for mobile devices.

56.     One of the most egregious violations that Burke was concerned about, and that Birchett reported on the audit questionnaire, was that the City knowingly and deliberately failed to comply with 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108, which prohibited convicted felons and persons with other disqualifying criminal convictions from accessing CJIS data. Burke had earlier reported to Gunn and Wright that the City permitted employees known to have felony convictions and other disqualifying criminal convictions to access confidential CJIS data. The City knowingly and deliberately allowed employees who were disqualified due to criminal convictions to have access to CJIS. These employees included Bret Belsher (Class B misdemeanor), Courtney Chadwick (Class B misdemeanor), Mark Deboer (Class A misdemeanor), Stephen Doss (Class A misdemeanor), Neaita

Franklin (felony conviction), Virginia Gomez (felony conviction), Wyatt Smith (Class A misdemeanor), and Grant Stellmaker (felony conviction).

57.     When Birchett initially reported the unauthorized CJIS access to the City, CJIS access permissions were initially removed and the disqualified employees were physically moved such that they did not have access to CJIS computers. Within less than six months, however, DeBoer and Doss had their CJIS access restored.

58.     Burke and Birchett again reported the unauthorized access to the City, and permissions for DeBoer and Doss were again removed. DeBoer, however, retained access to CJIS due to so-called "nested permissions groups" that gave DeBoer, and possibly others, unauthorized access to CJIS records. Birchett presented a remediation plan to Burke that included automated tools to disentangle the nested permission groups.   Burke and Birchett reported the CJIS noncompliance and presented their remediation plan to director Wright, who rejected it. By refusing to revoke CJIS access privileges for DeBoer and Doss, the City intentionally violated, and continues to violate, 28 U.S.C. § 534, 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108.

59.     Another egregious violation that Burke and Birchett included in their whistleblower report was that the City did not comply with Federal CJIS regulations that the City maintain one year of log data identifying access to CJIS records. Federal CJIS regulations require that the City maintain log records that "clearly identify both the operator and the authorized receiving agency, clearly identify the requester and the secondary recipient and take the form of a unique identifier that shall remain unique to the individual requester and to the secondary recipient throughout the

minimum one (1) year retention period." 28 C.F.R. § 20.21(f)(1). The City's Computer Aided Dispatch System complied with this requirement, but other City systems that also store CJIS data do not, such as the Police Department's Gang Operations Unit, Sex Offender Operations Unit, and other unit systems.

***The City Attempts to Muzzle Burke from Reporting Violations of Law***

60. The FBI CJIS Security Policy 3.2.9 requires that each City's Local Agency Security Officer ("LASO") shall "ensure the CSA ISO [Criminal Justice Information Security Officer] is promptly informed of security incidents."

61. At all times relevant hereto, the LASO was William Birchett. Birchett also held the title of Senior Information Technology Solutions (ITS) Manager.

62. In an email dated November 20, 2018, sent at 11:46 AM, Gunn ordered Burke and other members of his cybersecurity team to seek prior authorization before communicating information concerning security issues to anyone outside of the IT department. The email, attached as Exhibit O, was sent in Gunn's capacity as Acting CFO, and was sent on behalf of the City.

63. In bold print, the email states that "nothing should be communicated inside or outside of the organization of an information security nature without this group first reviewing and providing positive confirmation."

64. Gunn's November 20, 2018 email directly violates FBI CJIS Security Policy 3.2.9 by attempting to silence the City's LASO and prevent him from freely communicating with the Criminal Justice Information Security Officer.

65.     The email went on to specifically include "all materials for procurements, M&Cs, Internal Audit, External Financial Audits **and compliance audits** for the various regulatory programs of the City."

66.     On information and belief, one purpose of the email was to preclude employees such as Burke from blowing the whistle to DPS regarding numerous known Federal CJIS regulations for which the City was not in compliance.

67.     On information and belief, Gunn knew that the City was required to respond to a DPS questionnaire that would expose the City's compliance failures with various Federal CJIS regulations. Burke was one of the City employees responsible for responding to the questionnaire.

68.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet Federal CJIS regulations for keeping event logs for a minimum of one year and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

69.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet Federal CJIS regulations concerning the personnel who accessed CJIS data and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

70.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not have network architecture that allowed for point-to-point encryption from one network device to

another network device as required by Federal regulations and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

71.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not have a policy addressing personally owned or publicly accessible computers as required by Federal regulations and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

72.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not employ personal identification numbers that met CJIS standards as required by Federal regulations and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

73.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet CJIS requirements for mobile devices as required by Federal regulations and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

74.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet Federal CJIS regulations for wireless protocols and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

75.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet Federal CJIS regulations that require mobile devices to employ personal firewalls and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

76.     On information and belief, Gunn knew, or should have known, as Acting CFO and former Chief Technology Officer, that the City did not meet Federal CJIS regulations that require a written plan with special reporting procedures for mobile devices and did not want the information released. Gunn's November 20, 2018 email tried to stop this information from being reported.

77.     Gunn made concerted efforts to obstruct Burke's ability to report the City's substantial violations of Federal CJIS regulations.

78.     Former Fort Worth Chief of Police, Joel F. Fitzgerald, Sr., PhD., upon learning of Gunn's directive that IT personnel were not allowed to communicate with his department without prior approval, concludes that "[t]his direction is in complete conflict with the MCA between FWPD and IT and DPS and the FBI may interpret it as a means to circumvent CJIS rules by silencing LASO [Birchett]." *See* Exhibit P.

79.     Gunn persistently reminded Burke and Birchett that the City absolutely cannot fail its cybersecurity audit, indicating that it was more imperative to lie and pass the audit than to be honest and come into compliance.

***City Fails to Notify Individuals of Cybersecurity Breaches Required by State Law***

80. Tex. Bus. & Com. Code Ann. § 521.053, regarding unauthorized use of identifying information, required the City to notify and disclose cybersecurity violations to all individuals whose data was ***actually*** or ***potentially*** compromised by those violations, and the City failed to do so during Burke's employment. For example, the City should have disclosed to individuals in the CJIS system whose data ***was*** or ***could have been*** accessed by convicted felons, or other persons with disqualifying criminal convictions, that their information was improperly accessed.

81. On information and belief, the City Council and Mayor were aware of some, if not all, of the reporting and notification obligations and took no action.

***Gunn and Wright Conspire to Cover Up Cybersecurity Issues***

82. As a direct and proximate result of Burke's several whistleblower reports, City employees Gunn and Wright first blamed Birchett, then shifted the blame to Burke. Both Burke and Birchett were making good faith efforts to report compliance issues in accordance with the law and their employment obligations, but were punished by Gunn and Wright instead of praised.

***The City Retaliates by Reassigning Burke's Direct Reports***

83. On January 2, 2019, within 90 days of Burke's CJIS whistleblower reports, Gunn and Wright made the executive decision to reassign Burke's direct reporters; effectively leaving Burke with no way to perform his employment obligations.

84. Gunn and Wright acted within the scope of their employment and, therefore, acted on behalf of the City.

85. By reassigning Burke's direct reports, Gunn and Wright, acting on behalf of the City, made a "personnel action" that affected Burke's "compensation, promotion, demotion, transfer, work assignment, or performance evaluation" under Tex. Gov't Code Ann. § 554.001(3).

***The City Retaliates by Reassigning Burke's IT Security Team***

86. On January 2, 2019, Gunn and Wright, acting within the scope of their employment with the City, stripped Burke of his entire cybersecurity team, and assigned them to a different city employee.

87. Gunn and Wright made the decision to decision to reassign Burke's IT Security Team within 90 days of Burke's whistleblower reports to Birchett, DPS, Gunn and Wright.

***The City Retaliates by Adding a Permanent Negative Review Memorandum to Burke's Personnel File***

88. In a memo dated January 2, 2019, Gunn issued a Memorandum to Burke, which was included within his permanent personnel file, criticizing his management competency. *See* Exhibit B.

89. The City's conduct constitutes an adverse employment action within 90 days of Burke's whistleblower reports to Birchett, DPS, Gunn and Wright.

***The City Retaliates by Giving Burke a "Pre-Determination" Notice***

90. In a memo dated January 11, 2019 the City issued a "pre-determination notice" that the City was considering terminating Burke's employment. *See* Exhibit C.

91. The City made its decision to issue the predetermination notice within 90 days of Burke's whistleblower reports to Birchett, DPS, Gunn and Wright.

***The City Retaliates With Second "Pre-Determination" Notice***

92. In a memo dated January 18, 2019, the City issued a second pre-determination notice that they were considering terminating Burke's employment and declared that they intended to place Burke on unpaid administrative leave when he returned from FMLA leave. *See* Exhibit D.

93. The City made its decision to issue the second predetermination notice within 90 days of Burke's whistleblower reports to Birchett, DPS, Gunn and Wright.

***The City Retaliates by Terminating Burke***

94. On March 22, 2019, Burke, through his counsel, requested an administrative review of the adverse personnel actions identified above. As part of the request for administrative review, Burke reported to the City Attorney the numerous violations of law. *See* Exhibit A.

95. The March 22, 2019 request for administrative review constitutes a whistleblower report.

96. On April 3, 2019, within 90 days of Burke's March 22, 2019 whistleblower report, City Attorney Kelly Albin informed Burke, through his attorney, that the City had made the decision to terminate Burke. *See* Exhibit E.

97. This conduct violates the Texas Whistleblower Act, codified at Tex. Gov't Code § 554.001 Ann., *et seq*.

***The City has the Burden of Proof***

98. The City made four adverse personnel actions against Burke within 90 days of whistleblower reports Burke made to Birchett, DPS, Gunn and Wright in November and December of 2018.

99. The City terminated Burke within 90 days of a March 22, 2019, whistleblower report to the City Attorney's Office.

100. The burden is on the City of Fort Worth to prove that the adverse personnel actions identified herein were not in retaliation for his reporting violations of law including, by way of example, and not limitation, 28 C.F.R. §20.21(f)(1), 45 C.F.R. § 164.502, Tex. Gov't Code Ann. § 552.108 and Tex. Bus. & Com. Code Ann. § 521.051 et seq.

## VIII.
### CAUSES OF ACTION

***Violations of Tex. Gov't Code § 554 -- The Texas Whistleblower Act***

101. The preceding paragraphs are incorporated by reference as if set forth verbatim.

102. The Texas Whistleblower Act provides that a local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. Tex. Gov't Code Ann. § 554.002(a).

103. An appropriate law enforcement authority is a part of a state of local governmental entity or of the federal government that the employee in good faith believes is authorized to regulate under or enforce the law alleged to be violated in the report, or investigate or prosecute a violation of criminal law. Tex. Gov't Code Ann. § 554.002(b).

104. The actions of the City of Fort Worth set forth in the foregoing facts constitute violations of the Texas Whistleblower Act, Tex. Gov't Code Ann. § 554.001, et seq. Retaliation against a public employee is expressly prohibited by Tex. Gov't Code Ann. § 554.002, and a public employee so retaliated against has the right to bring a private cause of action. Tex. Gov't Code Ann. § 554.003.

**COUNT 1:**

**In Response to Burke's Whistleblowing Reports, The City Retaliated by Issuing a Permanent Memo to Burke's Personnel File**

105. On numerous occasions in November and December 2018, Burke reported violations of law in good faith to Birchett, the LASO, whom Burke reasonably believed was authorized to enforce the laws alleged to have been violated in the whistleblower reports, as well as DPS, Gunn and Wright.

106. On January 2, 2019, the City issued a memorandum criticizing Burke's management capabilities and caused same to be permanently included in his personnel file.

107. As a result of Defendant's violations of the Texas Whistleblower Act, Plaintiff has suffered and hereby sues for: (1) reinstatement with backpay, or front-pay in lieu of reinstatement; (2) any and all actual damages, including but not limited

to past, present, and future compensation for wages lost, as well as any retirement and fringe benefits; (3) past, present, and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; (4) other compensatory damages yet to be discovered; (5) civil penalties; (6) court costs; and (7) reasonable attorneys' fees.

108. Defendant, and its employees Gunn and Wright, acting in the course and scope of their employment, showed actual malice in connection with their actions toward Burke by falsifying Burke's employment record so as to damage his reputation and his prospects for future employment, and by suspending and terminating Burke when they knew, or should have reason to know, that such suspension and termination were illegal. Such actions by the City and its employees constituted specific intent, or conscious indifference to, the prospect of substantial injury to Burke. Accordingly, Burke is entitled to up to $250,000 in damages under Tex. Gov't Code Ann. § 554.003(c).

109. As additional evidence of the malice, Gunn and Wright created a hostile work environment for all employees, including Burke, which is documented by an employee survey attached hereto as Exhibit Q.

**COUNT 2:**

**In Response to Burke's Whistleblowing Reports, The City Retaliated by Issuing a Pre-decision Memo Concerning Burke's Future Employment**

110. On numerous occasions in November and December 2018, Burke reported violations of law in good faith to Birchett, the LASO, whom Burke

reasonably believed was authorized to enforce the laws alleged to have been violated in the whistleblower reports, as well as DPS, Gunn and Wright.

111.    The City retaliated by issuing a pre-decision memo warning that the City was considering terminating Burke on January 11, 2019. The pre-decision memo constitutes an adverse employment action under the Texas Whistleblower Act.

112.    As a result of Defendant's violations of the Texas Whistleblower Act, Plaintiff has suffered and hereby sues for: (1) reinstatement with backpay, or front-pay in lieu of reinstatement; (2) any and all actual damages, including but not limited to past, present, and future compensation for wages lost, as well as any retirement and fringe benefits; (3) past, present, and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; (4) other compensatory damages yet to be discovered; (5) civil penalties; (6) court costs; and (7) reasonable attorneys' fees.

113.    Defendant, and its employees Gunn and Wright, acting in the course and scope of their employment, showed actual malice in connection with their actions toward Burke by falsifying Burke's employment record so as to damage his reputation and his prospects for future employment, and by suspending and terminating Burke when they knew, or should have reason to know, that such suspension and termination were illegal. Such actions by the City and its employees constituted specific intent, or conscious indifference to, the prospect of substantial injury to Burke.  Accordingly, Burke is entitled to up to $250,000 in damages under Tex. Gov't Code Ann. § 554.003(c).

114. As additional evidence of the malice, Gunn and Wright created a hostile work environment for all employees, including Burke, which is documented by an employee survey attached hereto as Exhibit Q.

**COUNT 3:**

**In Response to Burke's Whistleblowing Reports, The City Retaliated by Issuing a Second Pre-decision Memo Concerning Burke's Future Employment**

115. On numerous occasions in November and December 2018, Burke reported violations of law in good faith to Birchett, the LASO, whom Burke reasonably believed was authorized to enforce the laws alleged to have been violated in the whistleblower reports, as well as DPS, Gunn and Wright.

116. The City retaliated by issuing a second pre-decision memo warning that the City was considering terminating Burke on January 18, 2019. The second pre-decision memo constitutes an adverse employment action under the Texas Whistleblower Act.

117. As a result of Defendant's violations of the Texas Whistleblower Act, Plaintiff has suffered and hereby sues for: (1) reinstatement with backpay, or front-pay in lieu of reinstatement; (2) any and all actual damages, including but not limited to past, present, and future compensation for wages lost, as well as any retirement and fringe benefits; (3) past, present, and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; (4) other compensatory damages yet to be discovered; (5) civil penalties; (6) court costs; and (7) reasonable attorneys' fees.

118. Defendant, and its employees Gunn and Wright, acting in the course and scope of their employment, showed actual malice in connection with their actions toward Burke by falsifying Burke's employment record so as to damage his reputation and his prospects for future employment, and by suspending and terminating Burke when they knew, or should have reason to know, that such suspension and termination were illegal. Such actions by the City and its employees constituted specific intent, or conscious indifference to, the prospect of substantial injury to Burke. Accordingly, Burke is entitled to up to $250,000 in damages under Tex. Gov't Code Ann. § 554.003(c).

119. As additional evidence of the malice, Gunn and Wright created a hostile work environment for all employees, including Burke, which is documented by an employee survey attached hereto as Exhibit Q.

**COUNT 4:**

**In Response to Burke's Whistleblowing Reports, The City Retaliated by Terminating Burke**

120. On March 22, 2019, Burke, through his counsel, sought administrative review by the City Attorney's Office of the adverse memorandum added to Burke's employment file and the two pre-determination memos threatening to terminate Burke. In the March 22, 2019 request for administrative review, Burke identified numerous violations of law by the City.

121. Rather than actually addressing the violations of law, City Attorney Kelly Akin announced that Burke was terminated on April 3, 2019.

122.   The April 3, 2019 termination of Burke violated the Texas Whistleblower Act.

123.   As a result of Defendant's violations of the Texas Whistleblower Act, Plaintiff has suffered and hereby seeks actual damages in an amount not less than the maximum amount permitted by applicable law, based upon the allegations above.

124.   As a result of Defendant's violations of the Texas Whistleblower Act, Plaintiff has suffered and hereby sues for: (1) reinstatement with backpay, or front-pay in lieu of reinstatement; (2) any and all actual damages, including but not limited to past, present, and future compensation for wages lost, as well as any retirement and fringe benefits; (3) past, present, and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; (4) other compensatory damages yet to be discovered; (5) civil penalties; (6) court costs; and (7) reasonable attorneys' fees.

125.   Defendant, and its employees Gunn and Wright, acting in the course and scope of their employment, showed actual malice in connection with their actions toward Burke by falsifying, and harassing and pressuring others to falsify, Burke's employment record so as to damage his reputation and his prospects for future employment, and by suspending and terminating Burke when they knew, or should have reason to know, that such suspension and termination were illegal. Such actions by the City and its employees constituted specific intent, or conscious indifference to, the prospect of substantial injury to Burke.  Accordingly, Burke is entitled to up to $250,000 in damages under Tex. Gov't Code Ann. § 554.003(c).

126.    As additional evidence of the malice, Gunn and Wright created a hostile work environment for all employees, including Burke, which is documented by an employee survey attached hereto as Exhibit Q.

## IX.
## WAIVER OF IMMUNITY

127.    A violation of Tex. Gov't Code Ann. § 554.002 waives governmental immunity. Tex. Gov't Code Ann. § 554.0035.

## X.
## REQUESTS FOR DISCLOSURE

128.    Pursuant to Texas Rule of Civil Procedure 194, Defendant is requested to disclose, within fifty (50) days of service of this Request, the information or material described in Rule 194.2 and Rule 192(b)(6).

## XI.
## DEMAND FOR JURY

129.    Plaintiff hereby demands trial by jury for all causes of action stated herein.

## XII.
## PRAYER

Wherefore, Premises considered, Plaintiff respectfully prays that Defendant be cited to appear and answer herein, that upon final hearing of this cause, judgment be entered for the Plaintiff against Defendant for all damages in an amount within the jurisdictional limits of this Court, including actual damages, compensatory damages, special damages, exemplary damages, together with pre-judgment interest at the maximum rate allowed by law, post-judgment interest at the legal rate, costs of court, and such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully Submitted,


/s/ *Stephen A. Kennedy*
Stephen A. Kennedy
State Bar No. 11300425

**KENNEDY LAW, P.C.**
1445 Ross Ave. Suite 2750
Dallas, TX 75202
Tel.: (214) 716-4343
Fax: (214) 593-2821
skennedy@saklaw.net

ATTORNEY FOR PLAINTIFF

# EXHIBIT A



Stephen A. Kennedy
*Shareholder*
214.716.4343 (office)
214.593.2821 (efax)

1445 Ross Avenue, Suite 2750
Dallas, Texas 75202
skennedy@saklaw.net
www.saklaw.net

March 22, 2019

*Via Email to:*
*Sarah.Fullenwider@fortworthtexas.gov*

Sarah J. Fullenwider, Esq.
City Attorney
City of Fort Worth
200 Texas Street
Fort Worth, Texas 76102

      Re:    Employment Dispute

Dear Ms. Fullenwider:

      I represent Ronald Gene Burke ("Burke"), Assistant Director of IT Solutions for the City of Fort Worth, Texas ("CFW" or "City"). In a letter dated January 11, 2019, Kevin Gunn informed Burke that he was being placed on administrative leave. The letter further states that a pre-decision termination meeting was scheduled for January 22, 2019. On information and belief, City employees, including Mr. Gunn, among others, were aware that Burke was in the process of completing required paperwork for FMLA. The basis for the FMLA leave was and is directly related to events involving his employment and the conduct of Burke's supervisor, Mr. Gunn. Because Mr. Gunn is implicated in the activity discussed below, we address this grievance to you. This letter shall serve as Mr. Burke's administrative appeal of the City's actions involving his employment under § 554.006 of the Texas Whistleblower Act.

      In the course of his employment in 2018, Mr. Burke became aware of numerous violations of law associated with the City's cybersecurity system. He reported these violations of law to several City employees, including by way of example, and not limitation, Mr. Gunn (the City's Chief Technology Officer), Roger Wright (Assistant Director of IT), Joel Fitzgerald (the Chief of Police), and Aaron Bovos (the former Chief Financial Officer).

      Among other things, Mr. Burke reported violations of the Health Insurance Portability and Accountability Act of 1996, violations of 28 CFR Subpart B implementing 28 U.S.C. § 534, and violations of the Texas Cybersecurity Act. By way of example, Mr. Burke reported that hackers had diverted more than $530,000 of tax-payer money to off-shore accounts. Burke also reported that the City was not in compliance with CJIS requirements. To resolve these critical issues, Burke endorsed a proposal prepared by one of his direct reports, William Birchett, to bring the City's cybersecurity systems into compliance. The proposal requested funding in the amount of approximately $1 Million to resolve the issues. Neither the deficiencies nor the funding request was immediately reported to City Council. At this time, it is unclear whether

City Council has been informed of the deficiencies associated with the City's cybersecurity.

After reporting these violations, Mr. Gunn effectively demoted Burke by removing him as supervisor of the cybersecurity team. Further, Gunn issued a letter bearing the date January 11, 2018 [*sic*, 2019] to Mr. Burke. The letter includes a typographical error as to the date on page one. The letter was presented to Mr. Burke in 2019, not 2018. The body of the letter makes this clear, as Gunn requests a meeting with Mr. Burke on January 22, 2019. For purposes of clarity, we will refer to this communication as the "January 11 Communication." The January 11 Communication reflects that Mr. Gunn, as Burke's supervisor, was actively taking personnel action affecting Burke's continued compensation and employment.

The demotion and January 11 Communication constitute a violation of Chapter 554 of The Texas Government Code, commonly known as the Texas Whistleblower Protection Act. Mr. Burke also contends that he was constructively terminated based on the conduct of the City taken as a whole. Unless these issues are resolved, my client will be required to file suit which will expose the City's noncompliance issues. We would rather resolve these issues informally. Mr. Burke hereby makes demand that the City publicly apologize for its wrongful conduct, pay his attorneys' fees, and pay restitution.

We strongly recommend that you resolve these issues immediately. Failure to do so will require Burke to file suit under the Texas Whistleblower Act. Burke further reserves the right to bring any additional claims against the City available to him under State or Federal law.

For purposes of assisting you in your investigation, I have described several of Mr. Burke's claims in more detail below. This letter does not attempt to address all of the many issues associated with the City's cybersecurity deficiencies that led to the Texas Whistleblower Act violations forming the basis for Mr. Burke's complaint. Please refer to Mr. Birchett's June, 2018, report endorsed by Mr. Burke for more detail.

***CJIS Noncompliance Issues***

On information and belief, Kevin Gunn, the City's Chief Technology Officer, and others acting on his behalf, misrepresented the City's compliance with 28 CFR § 20.21(e) over a period of several years. Mr. Burke reasonably believes that Mr. Gunn and other City employees misrepresented the City's compliance with 28 CFR § 20.21(e) with respect to the most recent CJIS Audit. One example of non-compliance is that City does not maintain log records for two years as required by CJIS. The City's computer system associated with CJIS has not had, and currently does not have, the capacity to maintain the required log records. Mr. Burke contends that the City has misrepresented facts for the purpose of passing one or more CJIS audits and, when he refused to participate in

the most recent falsification efforts, Gunn demoted Mr. Burke and issued the January 11 Communication.

***June 19, 2018 Report***

On or about June 19, 2018, Mr. Birchett, who reported directly to Mr. Burke, identified numerous cybersecurity vulnerabilities at the CFW. In summary, he reported the following violations:

System logs were not being properly stored and retained;

Audit record retention did not meet the required minimum standards;

Advanced Authentication did not meet the required standard;

Proper digital evidence gathering tools were not in place;

The system had no automated incident handling mechanisms;

The system used to manage access enforcement was not properly maintained;

System level access controls did not prevent access by unauthorized users;

Required access control restrictions based on job function, physical location, or logical location in the network were nonexistent;

There was no method of monitoring remote access;

The required pin number length for advanced authentication did not meet required standards;

Locations that process Criminal Justice Information did not have proper physical access controls;

There was minimal enforcement of information or network traffic flow to ensure that all traffic leaving the secured areas was encrypted; and

The wireless network configurations and security settings did not meet required standards.

***Burke Endorses Birchett's Efforts to Correct Deficiencies***

In addition to reporting the deficiencies noted above, Mr. Birchett created a remediation plan which placed the most critical remediations first. His remediation plan

was estimated to cost approximately $1 Million and he sought budget approval through his supervisor, Mr. Burke, and Mr. Gunn. Mr. Burke endorsed the proposal. Mr. Gunn, however, refused to inform the City Council of the deficiencies, denied the existence of the problems, and opposed any increase in the budget. One of the biggest issues involved the resolution of the ACH fraud vulnerabilities that allowed hackers to steal taxpayer funds and divert the funds to offshore accounts. It is unclear at this time why Mr. Gunn was opposed to these remediations. It is possible Mr. Gunn secreted the deficiencies because he feared he would be held responsible for the issues discovered by Mr. Birchett. In any event, Mr. Gunn's behavior in refusing to disclose the information was suspicious and it is possible that Mr. Gunn was aware of the deficiencies and did not want the deficiencies corrected for unknown reasons. We lack specific information as to Mr. Gunn's motives and recommend that the City investigate Mr. Gunn's rationale for covering up the deficiencies identified by my client.

***Adverse Employment Action***

After the CJIS Auditor was informed of the violations of law, Mr. Gunn made the decision to blame the cybersecurity issues on Mr. Birchett, even though Mr. Birchett was the one who initially discovered and reported the issues, and later developed a remediation program as outlined in his June 19, 2018 Report discussed above. Mr. Gunn instructed Mr. Burke to discipline Mr. Birchett. Among other things, Mr. Gunn asked Mr. Burke to create a paper trail that would support the termination of Mr. Birchett. On information and belief, Mr. Gunn feared being held responsible for the enormous cybersecurity issues, including the loss of more than $530,000 due to ACH hacking, CJIS compliance deficiencies, and failure to act on the June 19, 2018 Report.

When Mr. Gunn asked Mr. Burke to create a false report that would blame the City's cybersecurity problems on Mr. Birchett, Mr. Burke refused. On or about January 2, 2019, Mr. Gunn retaliated by reassigning the cybersecurity team from Mr. Burke's supervision to Steve Streiffert and placed Mr. Birchett on administrative leave. Mr. Burke contends that he was demoted in retaliation for his refusal to falsify information relating to the City's cybersecurity deficiencies. This alone constitutes a violation of the Whistleblower Act.

The January 11 Communication likewise constitutes a violation of the Texas Whistleblower Act. The letter confirms that the City, through Mr. Gunn, was "seriously considering the termination of [Burke's] employment" in part because Mr. Burke would not "initiate disciplinary procedures" involving Mr. Birchett. The disciplinary procedures would have required Mr. Burke to make false statements regarding the employment performance of Mr. Birchett. In any event, the letter as a whole reflects the City's desire to affect Mr. Burke's employment because Mr. Burke reported violations of law to the following City personnel: Mr. Gunn (the City's Chief Technology Officer), Roger Wright (Assistant Director of IT), Joel Fitzgerald (the Chief of Police), and Aaron Bovos (the former Chief Financial Officer).

### *Instruction to Preserve Documents and Data*

You are hereby instructed not to destroy any documents, including electronic media, that relate to Mr. Burke. You are required to retain and protect all files and records (whether hard copy or electronically stored) as they are currently kept (without alteration) during the dispute resolution process and civil litigation. Specifically, you must not destroy, discard, sell, give away, or alter in any way any document, file, computer or electronic storage device that contains information concerning the dispute with Mr. Burke. This requirement to preserve evidence includes retaining any computer, server, tablet, and/or smart phone that contains such information, and retaining e-mails that may contain this type of information. Do not destroy, throw out, give away or alter any computer that may contain files concerning this pending dispute.

Please preserve the PST files, including instant messages, of all personnel involved with IT and cybersecurity, including by way of example, and not limitation, PST files, and IM messages, of Messrs. Gunn, Streiffert, Birchett, Wright, Bovos and all members of the cybersecurity team. Destruction of evidence will result in additional civil and criminal penalties and may be used by a judge or jury to increase a monetary award.

In addition to instant messages in the PST files, please be advised that instant messages are also saved on the server. Please retrieve the chat messages from the chat server that is on-premise and not in the cloud. The procedure is here. https://techcommunity.microsoft.com/t5/Skype-for-Business-IT-Pro/How-to-export-Skype-for-Business-conversation-history-into-text/td-p/44076. Again, this is for IM messages, of Messrs. Gunn, Streiffert, Birchett, Wright, Bovos and all members of the cybersecurity team.

We caution you not to wipe Mr. Burke's computer. You are instructed to preserve the "Virtual Desktop" associated with Mr. Burke and Mr. Birchett. Please immediately take physical possession of Mr. Burke's computer and preserve it so that all data is preserved.

If we should learn of any effort to destroy electronic data of any nature, or any failure to maintain such data as demanded herein, we may be required to seek a temporary restraining order.

We expect a response to all issues raised herein by April 1, 2019.

Sincerely,

Stephen A. Kennedy

# EXHIBIT B



FORT WORTH

MEMORANDUM

Date: January 2, 2018
From: Kevin Gunn, IT Solutions Director
To: Ron Burke, Assistant IT Solutions Director
Cc: Ron Burke Personnel File

Subj: Inadequate Management Oversight

Background:
William Birchett reports directly to you and is the Senior Information Technology Solutions Manager responsible for information security programs for the City of Fort Worth. His duties and responsibilities include all aspects of implementing, managing and communicating information security programs including compliance with Federal, State, and local policy. On December 20, 2018 Joel Fitzgerald, Chief of Police, sent a memorandum to Jay Chapa, Assistant City Manager, and David Cooke, City Manager, highlighting potential deficiencies in the Federal Criminal Justice Information Systems (CJIS) compliance program.

Discussion:
Most notable in Fitzgerald's memorandum is the continued potential for CJIS disqualified staff to access CJIS data. This was the third such notice that potential access continued. Will Birchett was directed after the second notice, and with your full knowledge, to ensure all disqualified staff access to CJIS systems was removed. Will failed to validate the access removal. His failure also indicates your inadequate management oversight of Will's work and, therefore, reflects poorly on your exercise of managerial control. When instructed by Roger Wright, Acting Director, to take corrective action for Will, you balked and argued against corrective action.

Your performance reviews dated 11/1/2017, 5/1/2018, and 11/1/2018 identified actions to develop or improve performance which included increasing attention to completed work and validation that work meets stakeholder requirements. Previous projects cited that fell short in the management oversight area are X: drive deployment, Office 365 deployment, Xmedius fax server, and Spark boards.

The City of Personnel Fort Worth Personnel Rules and Regulations section 13.5 lists the following conduct warranting disciplinary action:

- Failure to perform work in a satisfactory manner, including failure to meet deadlines and /or requirements regarding quantity and quality of work.
- Lack of attention, accuracy, caution or judgment; carelessness; negligence; or recklessness in performing work that results in waste of time and resources or creates dangerous or inappropriate situations.

Action:
This is your first occurrence of a memorandum to personnel file documenting inadequate management oversight. However, this trend has been brought to your attention in previous performance reviews. In the future you must ensure that you and your staff complete directed work in a timely fashion that meets or exceeds the requirements set forth in the directed work.

By signing below, you indicate receipt of this memorandum.

______________________ 1/12/2019
Kevin Gunn, Director

Received:

______________________ __/__/___
Ron Burke, Assistant Director

# EXHIBIT C



January 11, 2018

Ron Burke
5905 Lamb Creek Dr.
Fort Worth, TX 76179

Dear Mr. Burke:

The City of Fort Worth is seriously considering the termination of your employment due to your failure to perform your duties in a satisfactory manner. Therefore, a pre-decision meeting is scheduled for 09:00 a.m. on January 22, 2019 at the HR Conference Room located on the lower level of City Hall, 200 Texas St., Fort Worth, Texas 76102. The purpose for the meeting is to allow you an opportunity to respond to the reasons being considered to terminate your employment, which are explained further below. You will be off work on paid administrative leave until the meeting as scheduled above.

The Information Technology Solutions Department has lost confidence in your ability to perform the duties of Assistant Information Technology Solutions Director.

During the course of the last three years, your performance evaluations appropriately identified your successes as well as the areas that needed attention. In addition, you attended regular Senior Management staff meetings and Assistant Director staff meetings, and you received periodic instruction directly from the Department Head for areas under your direct supervision needing your attention and action. Nevertheless, there is a documented history of behavior showing needed improvement and a lack of employing basic management techniques to execute and complete assigned work. As a result, time and resources of the City have been expended without achieving the intended results. In addition, when presented with the poor performance and the need to improve, you become argumentative, separating yourself from ownership of the results and distancing yourself as part of the management team.

Your performance is substandard and there is little evidence of your willingness to change:

1. You execute tasks without meeting management intent or direction:

    a. A Department of Public Safety Auditor identified numerous serious concerns and for which we understood a two-week deadline, three weeks after you have no formal documented plan created to address the concerns.

    b. Access privilege issues from a self-report Criminal Justice Information System (CJIS) access incident filed with Texas Department of Public Safety were reported as remediated multiple times over a period of many months without resolving the original issue.

    c. Physical security in the Zipper building continues to have errors in execution.

    d. Office 365 is only partially deployed for email. There are still E1 and E3 license reconciliation and public folder conversion with no formal documented plan to drive to completion.

2. Procurement only partially implemented or not at all:

    a.  OKTA Identity Management purchased on 9/14/2018 for $246,804.14.  A justification for moving the procurement to an earlier date was provided to address the multifactor authentication (MFA) security needs of eCitation which was to begin rollout in early December 2018.  On 1/8/2019 it was discovered that the design and implementation of MFA for eCitation has not started. On November 15, 2018 a meeting was held to discuss deploying OKTA to the organization emphasizing communications and pre-enrollment. Little to no follow-up communications have been sent as of 1/8/2019.

    b.  CrowdStrike was purchased on 5/1/2018 for a total annual cost of $149,952. As of 1/8 2019 the software was still not deployed on all City computers and no formal, documented plan for completion.

    c.  Splunk log management was purchased on 4/4/2018 for $20,900 with a recurring cost of $71,778. This purchase was made to address logging requirements for CJIS.  As of 1/8/2019, only 9 domain controllers are logging any data and no applications are logging required data.  There is no plan to identify what data must be logged from which servers and equipment nor does a plan exist to setup additional logging of any nature.

3.  Lack of responsible stewardship:

    a.  Your management asked for a plan to address CJIS compliance. You and your staff developed a plan requiring more than $1MM in additional and recurring expense. You did not perform a satisfactory analysis of existing solutions, process or procedural changes, and policy adjustments which could be implemented to avoid such a drastic increase in operating expenses.

    b.  Your management asked for a plan to address O365 seat licensing which is needed to plan funding needs for Microsoft Office Suite licensing.  Without this plan, the City will potentially incur significant redundant expenditures or be without vendor support on Microsoft Office products.

4.  Conduct issues:

    a.  You conducted several discussions with peers in the Department where you derided the Department management without factual evidence and initiated or perpetuated rumors creating a disrespectful and/or unprofessional environment. Your reporting staff recounted similar discussions from you impacting their morale and effectiveness. During these same discussions, you criticize your Department management while divorcing yourself from the critical role you should play in the Department management team. These actions are contrary to the role of Assistant Director.

    b.  You have been directed to initiate disciplinary procedures for staff and have failed to execute in a timely manner.  These failures and delays not only exhibit poor managerial practice, but also deprive staff of feedback critical to their success.

5.  Inadequate managerial oversight of a Senior Manager under your direct supervision, which is documented in a memo you acknowledged on January 2, 2019.

6.  On 01/04/2019, you attended an executive staff budget development meeting for FY2020 and exhibited little knowledge about submissions for your teams.

*Relevant Policies*

Your actions are in violation of the following city Personnel Rules & Regulations:

- 13.5   Conduct Warranting Disciplinary Action
  - Failure to perform assigned work.

- Failure to perform work in a satisfactory manner, including failure to meet deadlines and /or requirements regarding quantity and quality of work.
- Failure to observe policies, procedures, rules, regulations or standards
- Engaging in behavior that is inappropriate or disruptive in the workplace (such as yelling, use of profanity, name-calling, excessive gossiping that negatively impacts productivity, etc.).
- Discourteous treatment of others.
- Insubordination
- Disrespectful or unprofessional conduct in the workplace (e.g. yelling, using profanity, using demeaning or abusive language, using racial slurs, etc.).

*Pre-Decision Meeting Information*

*You may have a representative at the meeting. If your representative will be an attorney, you must let us know in advance so that we can make arrangements to have a City Attorney also present at the meeting.* You are granted one opportunity to reschedule the meeting. If the meeting is rescheduled at your request, you will not be paid administrative leave between the date of the originally scheduled meeting and the date of the rescheduled meeting. However, you will be paid for the time you are in attendance at the rescheduled meeting. To reschedule, you must contact Roger Wright at 817-392-2230 no later than January 18, 2019. If the meeting is rescheduled in a timely manner, it must be convened by January 29, 2019. Failure to convene the meeting by January 29, 2019 will result in your forfeiture of a pre-decision meeting and a decision will be made based upon the information we have. You will not be penalized if due to unforeseen events the January 29, 2019 deadline cannot be met by the department. Immediately turn in all City-issued keys, cell phones, I.D. badges and any other City-issued documents and/or equipment. Items may be returned to you as needed following the pre-decision meeting if the decision is to take an action other than termination.

Kevin Gunn
Information Technology Solutions Director

Date 1/11/2019

Cc: HRIS Records

- Failure to perform work in a satisfactory manner, including failure to meet deadlines and /or requirements regarding quantity and quality of work.
- Failure to observe policies, procedures, rules, regulations or standards
- Engaging in behavior that is inappropriate or disruptive in the workplace (such as yelling, use of profanity, name-calling, excessive gossiping that negatively impacts productivity, etc.).
- Discourteous treatment of others.
- Insubordination
- Disrespectful or unprofessional conduct in the workplace (e.g. yelling, using profanity, using demeaning or abusive language, using racial slurs, etc.).

*Pre-Decision Meeting Information*

*You may have a representative at the meeting. If your representative will be an attorney, you must let us know in advance so that we can make arrangements to have a City Attorney also present at the meeting.* You are granted one opportunity to reschedule the meeting. If the meeting is rescheduled at your request, you will not be paid administrative leave between the date of the originally scheduled meeting and the date of the rescheduled meeting. However, you will be paid for the time you are in attendance at the rescheduled meeting. To reschedule, you must contact Roger Wright at 817-392-2230 no later than January 18, 2019. If the meeting is rescheduled in a timely manner, it must be convened by January 29, 2019. Failure to convene the meeting by January 29, 2019 will result in your forfeiture of a pre-decision meeting and a decision will be made based upon the information we have. You will not be penalized if due to unforeseen events the January 29, 2019 deadline cannot be met by the department. Immediately turn in all City-issued keys, cell phones, I.D. badges and any other City-issued documents and/or equipment. Items may be returned to you as needed following the pre-decision meeting if the decision is to take an action other than termination.

Kevin Gunn
Information Technology Solutions Director

1/11/2019
Date

Cc: HRIS Records

# EXHIBIT D



FORT WORTH

Certified Mail #
9489 0090 0027 6008 2672 74

January 18, 2019

Ron Burke
5905 Lamb Creek Dr.
Fort Worth, TX 76179

Dear Mr. Burke:

On January 11, 2019 you received a pre-decision meeting notice that the Information Technology Solutions Department is seriously considering the termination of your employment. The meeting notice stated that a pre-decision meeting was scheduled for 09:00 a.m. on January 22, 2019 at the HR Conference Room located on the lower level of City Hall, 200 Texas St., Fort Worth, Texas 76102 to allow you an opportunity to respond to the reasons being considered to terminate your employment. At that time, you were instructed to remain off work on paid administrative leave until the date of the meeting as scheduled above.

Since then, I was informed by the department's Medical Records Custodian (MRC) that you are off work on an FMLA leave of absence effective January 11, 2019. Therefore, your pre-decision meeting as scheduled above has been placed on hold until you return from FMLA leave and will be rescheduled immediately upon your return. Your paid administrative leave was discontinued effective January 11, 2019. To continue receiving pay, you must use your personal leave time in accordance with your FMLA leave. If you exhaust your available leave time before the expiration of your protected leave, you will be placed in an unpaid leave status.

Regards,

Kevin Gunn
Information Technology Solutions Director

Cc: Employee and Labor Relations Division
HRIS Records

# EXHIBIT E



FORT WORTH®

Kelly Albin
Assistant City Attorney II
Kelly.Albin@FortWorthTexas.gov

Direct Dial: (817) 392-2316
Facsimile: (817) 392-8359

Carolyn McFatridge
Senior Assistant City Attorney
Board Certified Labor and Employment Law
Texas Board of Legal Specialization
Carolyn.McFatridge@FortWorthTexas.gov

Direct Dial: (817) 392-7612
Facsimile: (817) 392-8359

April 3, 2019

***Via Email:*** ***skennedy@saklaw.net***

Stephen Kennedy
Kennedy Law, P.C.
1445 Ross Avenue, Suite 2750
Dallas, TX 75202

Dear Mr. Kennedy:

This letter is in response to your correspondence dated March 22, 2019, regarding Ron Burke. Your complaint of your client's constructive discharge was surprising given that Mr. Burke is still employed by the City as an Assistant IT Director and he is accessing leave benefits at this time. We will, however, accept your letter as notice of your client's resignation. Please note that Kevin Gunn, the IT Solutions Director, intends to allow Mr. Burke to continue using his paid leave through the duration of the FMLA-protected period, despite Mr. Burke's intervening resignation. However, if your client prefers to have his leave benefits terminated as of the date of your letter, the City will respect such a request.

In addition, the allegations submitted on behalf of your client will be reviewed pursuant to applicable internal policies and Mr. Burke can expect to hear from an investigator in the coming weeks. At this point, the City is declining your client's demands; however, at the conclusion of the internal investigation, the situation will be reassessed as appropriate and you will be notified if our position has changed.

Sincerely,

Kelly Albin
Senior Assistant City Attorney

KA/jam

# EXHIBIT F

**From:** Kinsler, Christopher G <Christopher.Kinsler@fortworthtexas.gov>
**To:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Cc:** Zedler, Doug <Douglas.Zedler@fortworthtexas.gov>, Rauscher, Mark <Mark.Rauscher@fortworthtexas.gov>
**Subject:** URGENT - Employee Data Vulnerability on HR Benefits Portal
**Date:** September 10, 2018 at 8:49:18 AM CDT

William –
While I was looking into benefit coverage with the city, I discovered a huge data vulnerability on the Employee Benefits Center Website.

You'll notice if you go to: https://cfw.e.paylogix.com/Login.aspx that it will ask for your employee ID number when you go to the site. However, there is no user verification at all regarding that number. You can enter ANYONE's number (via typo or maliciously), and when clicking on the profile tab, can then see their Hire Date, Full Legal Name, DOB, Email, Address, Phone Number, and any dependent information (including SSN) that was previously entered.

What's worse is that this site appears to be open publically to the internet, which means that anyone could mine this data for the entire city by iterating through incremental employee numbers one-by-one with just a few lines of code

I'm sure you'll agree that this is a huge exposure for the city and employees, and would be a goldmine for social engineering and other malicious uses.

Can you look into this and have HR determine a way to put this behind some form of legitimate authentication?

** I've also opened ITSM 811293 for your team to track this issue





--------------

**Chris Kinsler**
Sr. IT Tech Support Analyst
Fort Worth Fire Department
Fire IT Support:  817-392-6699
Direct\Office:    817-392-6638
City Cell:        682-404-0760
Christopher.Kinsler@fortworthtexas.gov

Bob Bolen Public Safety Training Complex
Fire Administration - 505 W Felix St, Admin IT 1813, Fort Worth TX 76115

Need Support?  Open a ticket with our team:  FireIT@fortworthtexas.gov or call us at 817-392-6699
*City of Fort Worth — Working together to build a strong community.*



FORT WORTH

[illegible]

**From:** ITCSC@fortworthtexas.gov
**To:** zz_it_cybersecurity@fortworthtexas.gov
**Subject:** New Task for Incident:811293 is assigned to your team
**Date:** September 10, 2018 at 8:49:06 AM CDT

New Internal Task for Incident:811293 is assigned to your team:

Customer:
  Christopher Kinsler
  505 W. Felix Street
  8173926638

Priority: 4
Summary: Employee Data Vulnerability on HR Benefits Portal
Details: William – While I was
looking into benefit coverage with the city, I discovered a huge
data vulnerability on the Employee Benefits Center Website. You'll
notice if you go to: https://cfw.e.paylogix.com/Login.aspx that it
will ask for your employee ID number when you go to the site.
However, there is no user verification at all regarding that
number. You can enter ANYONE's number (via typo or maliciously),
and when clicking on the profile tab, can then see their Hire Date,
Full Legal Name, DOB, Email, Address, Phone Number, and any
dependent information (including SSN) that was previously entered.
What's worse is that this site appears to be open publically to the
internet, which means that anyone could mine this data for the
entire city by iterating through incremental employee numbers
one-by-one with just a few lines of code I'm sure you'll agree that
this is a huge exposure for the city and employees, and would be a
goldmine for social engineering and other malicious uses. Can you
look into this and have HR determine a way to put this behind some
form of legitimate authentication?

# EXHIBIT G

**From:** Gregory, Nathan
**Sent:** Tuesday, March 5, 2019 9:15 AM
**To:** Girton, Alan <Alan.Girton@fortworthtexas.gov>; Kinsler, Christopher G <Christopher.Kinsler@fortworthtexas.gov>
**Cc:** Zedler, Doug <Douglas.Zedler@fortworthtexas.gov>; Rauscher, Mark <Mark.Rauscher@fortworthtexas.gov>; Wright, Roger A <Roger.Wright@fortworthtexas.gov>; Streiffert, Steve <Steve.Streiffert@fortworthtexas.gov>; Vang, Pao <Pao.Vang@fortworthtexas.gov>; Gilmer, Valerie Jean <Valerie.Gilmer@fortworthtexas.gov>; Hinton, Joanne <Joanne.Hinton@fortworthtexas.gov>
**Subject:** RE: URGENT - Employee Data Vulnerability on HR Benefits Portal

Hi Alan and Chris,

I have checked into this this morning. The link that was used back in September, listed at the bottom of this email chain, is no longer the link that is listed publically on the web-site. The public link requires one to put in their email address, and then receive an email to verify it, which means it has additional security in place. That link was changed last year when this was discovered.

However, the Benefits team did not know that the old link still works. We have contacted Beneplace this morning, the vendor, to have this link immediately corrected. Either the old link needs to be de-activated, or it needs forwarded to the new link, or additional security put on it. Even though it is not a link that is publically available, it still exists, and must be corrected asap.

Thank you, and I'll provide an update when we have one from the vendor.

**Nathan Gregory, SPHR, SHRM-SCP**
Assistant Director
Human Resources Department
200 Texas Street
Fort Worth, TX 76102
817-392-7847
Nathan.Gregory@fortworthtexas.gov

***City of Fort Worth — Working together to build a strong community.***

FORT WORTH.

All folders are up to date. Connected to: Microsoft Exchange

tled - Message (H... 20190516 WFTS Quer...

# EXHIBIT H

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Lee, Bobby <Bobby.Lee@fortworthtexas.gov>, Varghese, Alex <Alex.Varghese@fortworthtexas.gov>, Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** [Immediate Access] GPO for wireless for PD
**Date:** December 21, 2018 at 3:07:59 PM CST

Andrew,

We will need to push a hidden SSID for PD wireless in the next few weeks for all of their devices. This must be completed in a short period of time. Will has the details on what is required for CJIS, as well as the timing, but this must receive attention during this period of short staffing. Please coordinate accordingly to ensure this gets done and status me every other day or so please. We are under the microscope on this…let's get it done.

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

<mailcore::MessageHeader:0x600000185400 Message-ID: DM5PR0901MB232802A5FDBEA0C62D9686389EB80@DM5PR0901MB2328.namprd09.prod.outlook.com From: mailcore::Address:0x600002fd7280 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address:0x600002fd6fe0 Lee, Bobby <Bobby.Lee@fortworthtexas.gov>,mailcore::Address:0x600002fd7500 Varghese, Alex <Alex.Varghese@fortworthtexas.gov>,mailcore::Address:0x600002fd7660 Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>,mailcore::Address:0x600002fd77e0 Birchett, William <William.Birchett@fortworthtexas.gov>] Subject: [Immediate Access] GPO for wireless for PD X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/related; boundary="_006_DM5PR0901MB232802A5FDBEA0C62D9686389EB80DM5PR0901MB2328_"; type="text/html" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5PR0901MB2517;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en;;SKIP:1; X-MS-Exchange-Organization-Network-Message-Id: abe89ead-af95-4d21-74f2-08d667886353 MIME-Version: 1.0 Thread-Topic: [Immediate Access] GPO for wireless for PD X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4ea9-ae48-a4c2197f024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSZzT9+upo8MWIvRamb6cepedl3QuA== x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: rJgpy9Z2fiyJlwVCxO68ZufBzJQTfXRfimK5AI+sey7gGtSMCclA8uotw58eDQe/IasrjBCQgbezcKAbdG/TuSnoBeRrfEgg+rRJobrXQaYfTOi0OmU/TCHUQxGCDK8F55yaLwQ21DG0SnyjanrMWvurAr7Q0JW0T1ezNM7U38fP3FxDM+R8BGAoPCNUDdJyS2F3JMbu7iXRSmni/j2Bjd+Uqo7G2OLZ/BazWdfpqjeB56csysqBIOe4LXYk7rC5FeFXK6eMrYCMXbcT6NVADRbHucKAqJ7SH8ka8+ioJooks48FeZZIV4QSr3CACMV6nMFdup6YN7a1Yyrw7b4myfcsp8OSr8lCubUtLd8UD9xgBQS4BewT8UpCZAUP Received: from DM5PR0901MB2423.namprd09.prod.outlook.com (52.132.134.13) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1446.21 via Mailbox Transport; Fri, 21 Dec 2018 21:08:01 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:6FsqWVFIYUPdgbP/apt5rPbZMD1QwBdeKS8ehtqSy8el9BL6v9B9V3HFIE3UR1+ucdVH3lpc7BbTiuDGO5ct0DsKQHfIaRk2+xhbuoIm7iC5ErIMh2AhJA+EQnomG3AQA3rougOrjaYDC1wuJ8oJF9UggOvvwevRXneHSHbt2RLtFVpQspE36I7346m30rCOLX7PAYMCJasP/5rcfu3E8b3873+9Q9Bdg6a0kfbCQdN1Y/l614WAmA9A2PTV89+9mJv45mruGVaHthn2UxM7UM8LNT/P2HMxdqeus7xe0rbm+veyijEa/7+m+GfU/imFMkJ8qR2B9KMYe5f0ughJu1WpxcCStySEDX5jpyNc2vhZ3FA2m9chgUfdvdWkdd8pCBK9eo44lhQUkqFw== X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1 >
Email-Archiver-Version: 384.100

# EXHIBIT I

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Varghese, Alex <Alex.Varghese@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>, Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>
**Subject:** [Requires Immediate Action] PD Tech Admin
**Date:** December 21, 2018 at 3:12:28 PM CST

Once the change to PD Tech Admin / Tech Admin are completed, I want them verified and I want a screenshot of the verified results. I want ***positive confirmation*** from all three of you that you believe that it is solved once and for all. You heard the Chief and Roger – this is our third or fourth time with this problem. We can't have this happen again.

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

<mailcore::MessageHeader 0x600001d9d280 Message-ID: DM5PR0901MB23288341B092B949C2894D3B9EB80@DM5PR0901MB2328.namprd09.prod.outlook.com From: mailcore::Address 0x6000033da320 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: (mailcore::Address 0x6000033dafe0 Varghese, Alex <Alex.Varghese@fortworthtexas.gov> mailcore::Address 0x6000033db340 Birchett, William <William.Birchett@fortworthtexas.gov> mailcore::Address 0x6000033db900 Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>) Subject: [Requires Immediate Action] PD Tech Admin X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/related; boundary="_006_DM5PR0901MB23288341B092B949C2894D3B9EB80DM5PR0901MB2328_"; type="text/html" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5PR0901MB2519;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en;;SKIP:1; X-MS-Exchange-Organization-Network-Message-Id: f4c5e381-dcf3-44ca-71e4-08d667890341 MIME-Version: 1.0 Thread-Topic: [Requires Immediate Action] PD Tech Admin X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4e49-ae48-a4c2197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSZcd90/L8HtTN+QTWPymJj1BS4VQ== x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: [illegible] Received: from DM5PR0901MB2423.namprd09.prod.outlook.com (52.132.134.11) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1446.21 via Mailbox Transport; Fri, 21 Dec 2018 21:12:29 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:[illegible] X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1 >
Email-Archiver-Version: 384.100

# EXHIBIT J

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Varghese, Alex <Alex.Varghese@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>, Lee, Bobby <Bobby.Lee@fortworthtexas.gov>, Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>, Callahan, David <David.Callahan@fortworthtexas.gov>
**Subject:** Comprehensive list for the CJIS action items
**Date:** December 21, 2018 at 4:01:17 PM CST

We need a list of what items we need to accomplish / purchase, who's doing it, and when. We also have some items to research. Here are the few I remember, let's keep adding until it's all there. We need steps, milestones, and dates.

- PD DMZ – **David / Bobby / Will / Alex** - already documented. What are the steps and milestones with dates?
- Shut down PD WiFi – **Bobby** - This means killing it, building a hidden SSID, pushing a GPO to get all PD devices back onto the new SSID, and re-enabling it.
- Printers – **Andrew** - are they encrypted transport? What about the drives that store the scans locally?
- CJIS Drive Data Erasure/Destruction – **Andrew** is working on documentation that shows that we verify/audit that they are destroying it per our contractual obligation
- Physical security audit – PD has a list of security "concerns" with who had access and when. **Andrew** – please reach out to Michael Munday to get a list of "no go" zones that will require an escort moving forward and a documented procedure on how we obtain access to provide support.
- Netwrx Auditor – **Will** – We need to obtain the second module. Cost? Quotes? Etc.

I'm missing a bunch, and I know it…

Respond with your adds in-line, please.

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*



Follow Fort Worth

   

<mailcore::MessageHeader 0x600001844a00 Message-ID: DM5PR0901MB232804979F42D2998D2D257E9EB80@DM5PR0901MB2328.namprd09.prod.outlook.com From: mailcore::Address 0x600003678a80 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address 0x600003678200 Varghese, Alex <Alex.Varghese@fortworthtexas.gov> mailcore::Address 0x600003678400 Birchett, William <William.Birchett@fortworthtexas.gov> mailcore::Address 0x600003678480 Lee, Bobby <Bobby.Lee@fortworthtexas.gov> mailcore::Address 0x6000036789a0 Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov> mailcore::Address 0x600003677640 Callahan, David <David.Callahan@fortworthtexas.gov>] Subject: Comprehensive list for the CJIS action items X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/related; boundary="_006_DM5PR0901MB232804979F42D2998D2D257E9EB80DM5PR0901MB2328_"; type="text/html" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5PR0901MB2519;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en;;SKIP:1; X-MS-Exchange-Organization-Network-Message-Id: 4c6b4622-681c-45c0-85e1-08d66781d581 MIME-Version: 1.0 Thread-Topic: Comprehensive list for the CJIS action items X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4ea9-ae48-a4c2197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSZdtPiatlDn0gmRnCRc84m71wqng== x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: uY7zH3LeSBRxjK7ysmU2Ogcu8FJyEl8Mov1wKwnlYowuhz+dVaZibsaHayO0fwB2kZY/vBtxMhmLoUIx5EWRHwoOtNqPXLaw1xvdf2C6aaFNCRr+J447KfmURtzZm1rCD7aIddtrGgnjUrWCXks3gjQSwG+ZhuHqJz+Q7mYYru+UYaaw8FeYEDH5/CoXmayAlXkNS5BjbFH8LVk8BpGIQ6o57+/M/9+khhPRQ2VvLY8Jxcb5P73WPUKOY7VeO/bJr6CUtpJKypbpGYIf1MOXajaaEY+rZ3fhY02homgXBCGkRW/D5JKex+Yoxv074iwkuOWVN4gaGQehTMMvc5EcGfuLECTO5KW26pEdj/1pzO9VgSaJeGF/y8K/fjL8N Received: from DM5PR0901MB2421.namprd09.prod.outlook.com (52.132.134.10) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1446.21 via Mailbox Transport; Fri, 21 Dec 2018 22:01:19 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:af2A+UNmTGwwuXmSjrlY2VFD6X3aPCIQICYFL9gv6bvDkjfg2EzsLRqK1AqW0/C3FbpDPA4PYU89P8bjs7adlfgDur5MiOZ/oluhlr8sDcrDmrkJ025kIVK2LBwdcfEH9Z/XKppWOgM2+4hyuZs4NrPC8FoB8aayrOvjNzD86Bp2ar1pphSpEZf5rqQ+DtNmp105JRiPk4JXAzHtzFfqCZmZEkY5Y/WtDbVmB+/NEuJjoqoW+3tBEqgT+tMLzfklrghatd08raTNI/j6sJWFM3T533iEHrp2CMk0sD6D/eFKGTUWtKCqt4KCyLCK40senni7+n9KiaLgeg/WzFyoJucvUNBbV7q2MlA6PmsE77ktaa17MFNcrbUEUHjalLTyq536LkE1e6Sdp/w== X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1>
Email-Archiver-Version: 384.100

# EXHIBIT K

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Callahan, David <David.Callahan@fortworthtexas.gov>, Varghese, Alex <Alex.Varghese@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>, Lee, Bobby <Bobby.Lee@fortworthtexas.gov>, Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>
**Subject:** Comprehensive list for the CJIS action items
**Date:** December 21, 2018 at 4:31:50 PM CST

Proof. Pics or it didn't happen.

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

   

**From:** Callahan, David
**Sent:** Friday, December 21, 2018 4:30 PM
**To:** Varghese, Alex <Alex.Varghese@fortworthtexas.gov>; Burke, Ron G <Ron.Burke@fortworthtexas.gov>; Birchett, William <William.Birchett@fortworthtexas.gov>; Lee, Bobby <Bobby.Lee@fortworthtexas.gov>; Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>
**Subject:** RE: Comprehensive list for the CJIS action items

I removed Mark Deboer from the Tech_Admin group. If this causes him any issues send him my way and we will develop a solution for him.

Thanks

Callahan

**From:** Varghese, Alex
**Sent:** Friday, December 21, 2018 4:09 PM
**To:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>; Birchett, William <William.Birchett@fortworthtexas.gov>; Lee, Bobby <Bobby.Lee@fortworthtexas.gov>; Arnold, Andrew

<Andrew.Arnold@fortworthtexas.gov>; Callahan, David
<David.Callahan@fortworthtexas.gov>
**Subject:** RE: Comprehensive list for the CJIS action items

Pushing GPO for wireless is Andrew team. There is no need for hidden SSID to the police locations just turn it off – only molly_online SSID.

For the DMZ

We have figured the servers, irrespective of physical or virtual we can do it since it is in CH.

1. Build Zones in palo Alto, create ACLs (don't implement it yet) – Bobby
2. Get quotes and confirmation for the globalprotect module in palo alto – Alex (spoke to critical start they are working on it)
3. Test couple of machines connecting with globalprotect – Andrew / Alex - testing
4. Push the GPO for VPN to the machines thru sccm – Andrew
5. Implement the ACLs and test if it works as designed

 Regards,
 AV


**From:** Burke, Ron G
**Sent:** Friday, December 21, 2018 4:01 PM
**To:** Varghese, Alex <Alex.Varghese@fortworthtexas.gov>; Birchett, William <William.Birchett@fortworthtexas.gov>; Lee, Bobby <Bobby.Lee@fortworthtexas.gov>; Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>; Callahan, David <David.Callahan@fortworthtexas.gov>
**Subject:** Comprehensive list for the CJIS action items
**Importance:** High

We need a list of what items we need to accomplish / purchase, who's doing it, and when.   We also have some items to research.  Here are the few I remember, let's keep adding until it's all there.  We need steps, milestones, and dates.


- PD DMZ – **David / Bobby / Will / Alex** - already documented.  What are the steps and milestones with dates?
- Shut down PD WiFi – **Bobby** - This means killing it, building a hidden SSID, pushing a GPO to get all PD devices back onto the new SSID, and re-enabling it.
- Printers – **Andrew** - are they encrypted transport?  What about the drives that

store the scans locally?

- CJIS Drive Data Erasure/Destruction – **Andrew** is working on documentation that shows that we verify/audit that they are destroying it per our contractual obligation
- Physical security audit – PD has a list of security "concerns" with who had access and when. **Andrew** – please reach out to Michael Munday to get a list of "no go" zones that will require an escort moving forward and a documented procedure on how we obtain access to provide support.
- Netwrx Auditor – **Will** – We need to obtain the second module. Cost? Quotes? Etc.

I'm missing a bunch, and I know it...

Respond with your adds in-line, please.

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

   

---

   



<mailcore::MessageHeader:0x6000027d0300 Message-ID: DM5PR0901MB23281F07C19A6157C38D7D2B9EB80@DM5PR0901MB2328.namprd09.prod.outlook.com References: [DM5PR0901MB232804979F42D2998D2D237E9EB80@DM5PR0901MB2328.namprd09.prod.outlook.com,SN6PR09MB262122170F75945342D6FBBA8FB80@SN6PR09MB2621.namprd09.prod.outlook.com,SN6PR09MB2783A8D8C84C2CD3FB6726FDFCB80@SN6PR09MB2783.namprd09.prod.outlook.com] In-Reply-To: [SN6PR09MB2783A8D8C84C2CD3FB6726FDFCB80@SN6PR09MB2783.namprd09.prod.outlook.com] From: mailcore::Address:0x6000009c1bc0 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address:0x6000009c1740 Callahan, David <David.Callahan@fortworthtexas.gov>,mailcore::Address:0x6000009c3f00 Varghese, Alex <Alex.Varghese@fortworthtexas.gov>,mailcore::Address:0x6000009c39e0 Birchett, William <William.Birchett@fortworthtexas.gov>,mailcore::Address:0x6000009c3860 Lee, Bobby <Bobby.Lee@fortworthtexas.gov>,mailcore::Address:0x6000009c20c0 Arnold, Andrew <Andrew.Arnold@fortworthtexas.gov>] Subject: RE: Comprehensive list for the CJIS action items X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/mixed; boundary="_008_DM5PR0901MB23281F07C19A6157C38D7D2B9EB80DM5PR0901MB2328_" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5SPR01MB0354;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en; X-MS-Exchange-Organization-Network-Message-Id: 2daca8ab-0128-4bcf-b4e6-08d6679419a5 MIME-Version: 1.0 Thread-Topic: Comprehensive list for the CJIS action items X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4ea9-ae48-a4c2197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSZdtPuarIDn0gmRnCRc84m71wqngAAgPvgAADu3mAAABKCcA== x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: KsG8xALx094O+oeYiStZhTFBZFuLeLPiyq1EKHNI8Dxs1jxSz+ZFW+8/Uk8xG5cz8+/5S6kNp1t/upKX4mGIIpUevqxNC9BcQLRjSfA1vPMxLKibukbxpVwuVmtIGSeOcTW+xiIbLTT06HaTDVzJYtScm/8+Pt6m8OckvY+3m1WPrufCebjSNAk1k9cLeJ21ESPxt4qM/Kd8u+DJ3/acikr9KIzqU6NwSF8LmMfY7JP/5AJpIjFyw/BY1BkkRgenbkWLqQD HevyvuVIFoVG3T1ARNIYXzz2yXcjVJU8fFbWdIAPkoES+4H88XoVod315uNnJ1Z0J6vhZx+0ATd6mp+F8tXeIGIvBrTZCBeWsdrMS7jyP8I+IgMjCA/m4Czkm3buH1Wg+voVZCP3Y3dbvww== Received: from DM5SPR01MB0354.namprd09.prod.outlook.com (52.132.139.38) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1446.21 via Mailbox Transport; Fri, 21 Dec 2018 22:31:50 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:SkAu8jWgERKYodR+dxjNr/B6JyRQUOoDTN+gRkd5MX5yp19VkU8EcdVZ1wHgdanzV2+qj2AzH14w/edOyx6BSdHmmT6mGQ6hWcmSEJrW0kIT90FEl4zEz0XEgDfRmCStegV6MrEbIsWPexWBXdMCfFPZBgD3/VS7CtFKhYZG5oBcbLjx1MXB1scxxMn2vxOM66KNmSjH7wQqsnJVrJoyYCuWQxC9SeHLarWEzdN KoETOrUohJYdb6hYJie470Z+5LQteEPDFe+xLQRNd5Q8Tz+0f75FPNiyYbie3GFmacohOWxb+4vcYt0Kv2qZmyfAAXXqD43/7/uqKe7jrzY5VZGO+SUmTo8AoBacW/wRVOpW8r2M+61nBgAb6LdS5Bw6IQHqmXbLIXcJwrjeA== X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1 > Email-Archiver-Version: 384.100

# EXHIBIT L

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Callahan, David <David.Callahan@fortworthtexas.gov>, Bostick, Alton J <Alton.Bostick@fortworthtexas.gov>, Varghese, Alex <Alex.Varghese@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>
**Cc:** Wright, Roger A <Roger.Wright@fortworthtexas.gov>
**Subject:** Tech_Admin
**Date:** December 26, 2018 at 11:59:49 AM CST

Alex,

We have more than a few CJIS-looking items, and a few that may force us to ask questions in this list as they are fairly non-descript. Remember, we are trying to answer the questions:

a.) Can this person access CJIS data
b.) Can they change their own permissions to be able to access CJIS data

With those questions in mind, we need to investigate these items with a "least permissive" approach. If that means ripping them out entirely and then re-adding them one at a time, so be it.

First…what in the world is "Gustav?"

From Doss:
BC_Global Proxy GPO Exceptions
CFW_ChangeManagement_CatalogMgr
CFW_ProxyTestUsers
DiskImages
EndpointEncryptionUsers (does this mean he can access an encrypted hard drive?)
ISS
IT_ESX_Admins (Do any of the ESX hosts have CJI?)
IT_ESX_VDI_Admins
KVM Police Users (That looks very, very concerning)
PlatformTechnologies (Very generic – what does this grant access to?
RSBrowse ?
TMS (As in the Police Traffic Management System?)
zz_IT_Courts_Team (Are these ZZ groups just mail groups?)
zz_IT_Crime_Lab_Technical_Support

From Mark:
There are a myriad of ASXXX server admin – any of these CJIS?
AS132NEW_Administrators -- this is just bad practice. "New" administrators? C'mon…
CAD_VNC_Connections
CAD_Watch_General
CAD_Watch_Messaging
CAD_Watch_TLETS

CADEPO01_Administrators
CFW_SP_CAD_Owners
ITS Inform CAD Notifications
  LaserFiche_AllNamedUsers
  LaserFiche_IT_Support
  LaserFiche_Management

(this goes for quite a while…you get the point….)

**Alex** – I need some you to ensure this is audited fully, groups that are in any way suspect are noted.   Get me that list, and we'll likely remove all of them until we can fully research them.   Much if this is likely due to groups that are nested inside of groups that we are finding thanks to Netwrix.   We need to get this right, and it needs to be quick. Let's get on it.

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*



Follow Fort Worth

   

**From:** Birchett, William
**Sent:** Tuesday, December 25, 2018 12:23 AM
**To:** Munday, Michael <Michael.Munday@fortworthtexas.gov>
**Cc:** Wright, Roger A <Roger.Wright@fortworthtexas.gov>; Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**Subject:** Tech_Admin

Mark et al have been removed from Tech_Admin
We created a nonCJISTech_Admin
Renamed Tech_Admin to CJIS_TechAdmin
Moved non cleared personnel from CJIS_TechAdmin to nonCJISTech_Admin
Added nonCJISTech_Admin to the local admin GPO for all departments but Police, Fire, Courts, and ITS

Please verify you see the same on your side.

**Will Birchett, CISSP, CISM, CISA**
Senior Manager/Local Agency Security Officer
IT Solutions - Information Security
Office Phone: 817-392-8105
william.birchett@fortworthtexas.gov
***City of Fort Worth — Working together to build a strong community.***
FORT WORTH

---

Andy Forward Junior Member Posts: 3 June 2016

I may be guilty of skim reading a little bit but it looks as though you've stumbled across the same issue i found recently where the SDK source usage is set up to deal with a single room in a single gateway. There is a workaround. I haven't tested it yet but it's compiled and the logic seems sound to me.

I've attached an example of the amended source usage file I'm intending on using. In essence create a NX Virtual Dev for each room.

Aside from that I second what Eric is saying above. RMS Enterprise has allowed that extra layer as it were to enable you to drag and drop assets around regardless of the gateway they are using.





- Users and Computers - Effective Group Membership (1).csv, 13 KB

Netwrix Auditor  Tuesday, December 25, 2018 12:04 AM

# Users and Computers - Effective Group Membership

Lists all groups where the user or computer account is a member, either directly or via group membership, including cross domain membership. For each account, the following is reported: group name and domain it belongs to, and how group membership is implemented.
Note: To list groups from domains collected within all monitoring plans for AD, select Current session as snapshot date. For historical sessions, data only for selected monitoring plan will be included.

| Filter | Value |
| --- | --- |

Account: ci.fort-worth.tx.us/CFW Users/IT Solutions/Doss, Stephen
Total groups: 109

| Group name | Group domain | Membership type |
| --- | --- | --- |
| A2261_RemoteDesktopUsers | ci.fort-worth.tx.us (Domain) | Directly |
| A2904_HSA | ci.fort-worth.tx.us (Domain) | Directly |
| BC_Global Proxy GPO Exceptions | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_ChangeManagement_CatalogMgr | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_Printing | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_ProxyTestUsers | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_SP_CPMS_Visitors | ci.fort-worth.tx.us (Domain) | Group |
| CFW_SP_DESKTOP_Visitors | ci.fort-worth.tx.us (Domain) | Directly |
| cfw_sp_it_visitors | ci.fort-worth.tx.us (Domain) | Group |
| CFW_SP_OPS_Members | ci.fort-worth.tx.us (Domain) | Group |
| CHISLON_CFW_MCD | ci.fort-worth.tx.us (Domain) | Directly |
| CSO_MCLive_ReadOnly | ci.fort-worth.tx.us (Domain) | Group |
| DeskImages | ci.fort-worth.tx.us (Domain) | Directly |
| DeskImagesRW | ci.fort-worth.tx.us (Domain) | Directly |
| Domain Users | ci.fort-worth.tx.us (Domain) | Directly |
| EndpointEncryptionUsers | ci.fort-worth.tx.us (Domain) | Group |

- Users and Computers - Effective Group Membership (2).csv, 10.4 KB



Netwrix Auditor
Tuesday, December 25, 2018 12:07 AM

# Users and Computers - Effective Group Membership

Lists all groups where the user or computer account is a member, either directly or via group membership, including cross-domain membership. For each account, the following is reported: group name and domain it belongs to, and how group membership is implemented.
Note: To list groups from domains collected within all monitoring plans for AD, select Current session as snapshot date. For historical sessions, data only for selected monitoring plan will be included.

Filter Value

**Account:** ci.fort-worth.tx.us/CFW Users/IT Solutions/Stellmaker, Grant R

**Total groups:** 84

| Group name | Group domain | Membership type |
|---|---|---|
| Adobe_Photoshop_AppVolumes | ci.fort-worth.tx.us (Domain) | Group |
| Attachmate_AppVolumes | ci.fort-worth.tx.us (Domain) | Group |
| CFW_Outlook_PST_Blocked_Users | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_Printing | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_SharePoint_CSC_Team Members | ci.fort-worth.tx.us (Domain) | Directly |
| CFW_SP_CWMS_Visitors | ci.fort-worth.tx.us (Domain) | Group |
| cfw_sp_it_visitors | ci.fort-worth.tx.us (Domain) | Group |
| CFW_SP_OPS_Members | ci.fort-worth.tx.us (Domain) | Group |
| ChangeManagement Meeting Attendees | ci.fort-worth.tx.us (Domain) | Directly |
| City Secretary O365 Migration | ci.fort-worth.tx.us (Domain) | Group |
| CMO O365 Migration | ci.fort-worth.tx.us (Domain) | Group |
| Code O365 Migration | ci.fort-worth.tx.us (Domain) | Group |
| Communication and Public Engagement O365 Migration | ci.fort-worth.tx.us (Domain) | Group |
| CSD_MCLive_ReadOnly | ci.fort-worth.tx.us (Domain) | Group |
| DesktopHWSupportC480 | ci.fort-worth.tx.us (Domain) | Group |
| Domain Users | ci.fort-worth.tx.us (Domain) | Directly |

- Users and Computers - Effective Group Membership.csv, 45.2 KB

Netwrix Auditor Tuesday, December 25, 2018 12:02 AM

# Users and Computers - Effective Group Membership

Lists all groups where the user or computer account is a member, either directly or via group membership, including cross-domain membership. For each account, the following is reported: group name and domain it belongs to, and how group membership is implemented.
Note: To list groups from domains collected within all monitoring plans for AD, select Current session as snapshot date. For historical sessions, data only for selected monitoring plan will be included.

Filter Value

**Account:** ci.fort-worth.tx.us/CFW Users/IT Solutions/Deboer, Mark P
**Total groups:** 372

| Group name | Group domain | Membership type |
|---|---|---|
| Adobe_Photoshop_AppVolumes | ci.fort-worth.tx.us (Domain) | Group |
| AppServersAdmins | ci.fort-worth.tx.us (Domain) | Directly |
| AppSource_Med | ci.fort-worth.tx.us (Domain) | Directly |
| AS0414_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS0417_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS0421_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS045_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS062_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS121_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS12NSW_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS133_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS135_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS138_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS141_Administrators | ci.fort-worth.tx.us (Domain) | Directly, Group |
| AS200_Administrators | ci.fort-worth.tx.us (Domain) | Group |
| AS201_Administrators | ci.fort-worth.tx.us (Domain) | Group |

<mailcore::MessageHeader:0x600002e42180 Message-ID: DM5PR0901MB232812FF582D18867175SEDA9EB50@DM5PR0901MB2328.namprd09.prod.outlook.com References: [C7416264-1256-4682-8C97-69A191F05E40@fortworthtexas.gov] In-Reply-To: [C7416264-1256-4682-8C97-69A191F05E40@fortworthtexas.gov] From: mailcore::Address:0x60000017c9e0 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address:0x60000017d0c0 Callahan, David <David.Callahan@fortworthtexas.gov>,mailcore::Address:0x60000017ce40 Bostick, Alton J <Alton.Bostick@fortworthtexas.gov>,mailcore::Address:0x60000017c440 Varghese, Alex <Alex.Varghese@fortworthtexas.gov>,mailcore::Address:0x60000017cbc0 Birchett, William <William.Birchett@fortworthtexas.gov>] Cc: [mailcore::Address:0x60000017c360 Wright, Roger A <Roger.Wright@fortworthtexas.gov>] Subject: FW: Tech_Admin X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/mixed; boundary="_016_DM5PR0901MB232812FF582D18867175SEDA9EB50DM5PR0901MB2328_" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5PR0901MB2423;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en; X-MS-Exchange-Organization-Network-Message-Id: bb3ab8b2-f867-40a6-a308-08d66b5bedde MIME-Version: 1.0 Thread-Topic: Tech_Admin X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15360a8f-d0e5-4ea9-ae48-a4c1197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AQHUn8o9N2phVDCCE0CG7SunaOokaaWRTKYQ x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: [illegible] Received: from DM5PR0901MB2423.namprd09.prod.outlook.com (52.132.134.13) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1471.20 via Mailbox Transport; Wed, 26 Dec 2018 17:59:51 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:[illegible] X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1>
Email-Archiver-Version: 384.100

# EXHIBIT M

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** Door access check
**Date:** December 26, 2018 at 2:50:55 PM CST

Did a quick confirmation on this – Doss and DeBoer both still have access to the top door, and to the bottom floor door as well. Stellmaker does not. Also, that top door makes a click when you badge it, but it's not locking at all – you can open it without badging. Can we get that top floor fixed and get both doors locked down to just CJIS-cleared folks, please? Seems like something is amiss with the groups we have, or the doors themselves.

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

    

**From:** Burke, Ron G
**Sent:** Wednesday, December 26, 2018 1:43 PM
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check

Thank you for the confirmation, sir. I appreciate it.

Happy holidays,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*



Follow Fort Worth

   

**From:** Morgan, Christopher
**Sent:** Wednesday, December 26, 2018 1:42 PM
**To:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check

The only way access to this area

**Chris Morgan**
**Deputy City Marshal**
**Municipal Court Services Division**
**1000 Throckmorton Street, Fort Worth, Texas 76102**
**Office Phone: 817-392-6352**
**Cell Phone: 817-944-4194**
**Fax: 817-392-6687**
**chris.morgan@fortworthtexas.gov**

is if Zipper IT CJIS is granted, or again in the ZZ master profile

**From:** Burke, Ron G
**Sent:** Wednesday, December 26, 2018 1:30 PM
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** Door access check

Marshal Morgan,

We have two doors that lead up the back of the zipper building – one is the ground level door, and the other is the second floor rear door that leads into the far back of the building. I'm being advised that the second floor rear door is not locked down the way we expect it to be, and that non-CJIS cleared individuals have access to badge in and out of it. Can you confirm, please, that that second level door is keyed exactly

the same as the primary entrance CJIS door for zipper? (let me know if I'm making sense…it's hard without a map to point these things out)

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

   

<mailcore::MessageHeader:0x600002e10200 Message-ID: DM5PR0901MB2328C1E835C74B0F2FE6DF099EB50@DM5PR0901MB2328.namprd09.prod.outlook.com References: [DM5PR0901MB23280D32E567BF8B512516689EB50@DM5PR0901MB2328.namprd09.prod.outlook.com,DM5PR0901MB240820F2F64CDEDC293DCBB3FDB50@DM5PR0901MB2408.namprd09.prod.outlook.com] From: mailcore::Address:0x60000009d7e0 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address:0x60000009e760 Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>] Cc: [mailcore::Address:0x60000009e300 Birchett, William <William.Birchett@fortworthtexas.gov>] Subject: RE: Door access check X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/related; boundary="_006_DM5PR0901MB2328C1E835C74B0F2FE6DF099EB50DM5PR0901MB2328_"; type="text/html" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5SPR01MB0154;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en; X-MS-Exchange-Organization-Network-Message-Id: 1aac90a3-9165-4959-3827-08d66b73d521 MIME-Version: 1.0 Thread-Topic: Door access check X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4ea9-ae48-a4c2197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSdUSYKyHOHDpe/S02WHSyKoAIZpgAAcPtQAAAFFRAAAIZCgA== x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info:
[illegible]
[illegible] Received: from DM5SPR01MB0354.namprd09.prod.outlook.com (52.132.139.38) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1471.20 via Mailbox Transport; Wed, 26 Dec 2018 20:50:56 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics:
1;DM5PR0901MB2422;27:[illegible]
[illegible] X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1 >
Email-Archiver-Version: 384.100

# EXHIBIT N

**From:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** Door access check
**Date:** December 28, 2018 at 3:35:08 PM CST

Unfortunately, it seems that Doss and likely Mark still have access to both door panels. Can we re-check this? Or would it be better to re-issue badges?

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

   

**From:** Morgan, Christopher
**Sent:** Thursday, December 27, 2018 9:50 AM
**To:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check

I have found the issue, those doors were still attached to the ZZ dtn and the Zipper all.
This should have fix this issue

**From:** Burke, Ron G
**Sent:** Wednesday, December 26, 2018 2:51 PM
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check
**Importance:** High

Did a quick confirmation on this – Doss and DeBoer both still have access to the top door, and to the bottom floor door as well. Stellmaker does not. Also, that top door makes a click when you badge it, but it's not locking at all – you can open it without badging. Can we get that top floor fixed and get both doors locked down to just

CJIS-cleared folks, please?   Seems like something is amiss with the groups we have, or the doors themselves.

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*



Follow Fort Worth

   

**From:** Burke, Ron G
**Sent:** Wednesday, December 26, 2018 1:43 PM
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check

Thank you for the confirmation, sir.   I appreciate it.

Happy holidays,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov
*City of Fort Worth — Working together to build a strong community.*



Follow Fort Worth

   

**From:** Morgan, Christopher

**Sent:** Wednesday, December 26, 2018 1:42 PM
**To:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** RE: Door access check

The only way access to this area

**Chris Morgan**
**Deputy City Marshal**
**Municipal Court Services Division**
**1000 Throckmorton Street, Fort Worth, Texas 76102**
**Office Phone: 817-392-6352**
**Cell Phone: 817-944-4194**
**Fax: 817-392-6687**
**chris.morgan@fortworthtexas.gov**

is if Zipper IT CJIS is granted, or again in the ZZ master profile

**From:** Burke, Ron G
**Sent:** Wednesday, December 26, 2018 1:30 PM
**To:** Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>
**Cc:** Birchett, William <William.Birchett@fortworthtexas.gov>
**Subject:** Door access check

Marshal Morgan,

We have two doors that lead up the back of the zipper building – one is the ground level door, and the other is the second floor rear door that leads into the far back of the building. I'm being advised that the second floor rear door is not locked down the way we expect it to be, and that non-CJIS cleared individuals have access to badge in and out of it. Can you confirm, please, that that second level door is keyed exactly the same as the primary entrance CJIS door for zipper? (let me know if I'm making sense…it's hard without a map to point these things out)

Thanks,

**Ron Burke**
Assistant Director, IT Solutions – Infrastructure Engineering
Phone Number: 817-392-2655
Cell Phone: 602-653-4021
Ron.Burke@fortworthtexas.gov

*City of Fort Worth — Working together to build a strong community.*

Follow Fort Worth

<mailcore::MessageHeader:0x600002cd8200 Message-ID: DM5PR0901MB23286F7080F4D98EABEBABFB9EB70@DM5PR0901MB2328.namprd09.prod.outlook.com References: [DM5PR0901MB23280D32E567BF8B5123166859EB50@DM5PR0901MB2328.namprd09.prod.outlook.com,DM5PR0901MB240820F2F64CDEDC293DCBB3FDB50@DM5PR0901MB2408.namprd09.prod.outlook.com,DM5PR0901MB2328C1E835C74B0F2FE6DF099EB50@DM5PR0901MB2328.namprd09.prod.outlook.com,SN6PR0901MB2413F0C88B929322DE05DA25FDB60@SN6PR0901MB2413.namprd09.prod.outlook.com] In-Reply-To: [SN6PR0901MB2413F0C88B929322DE05DA25FDB60@SN6PR0901MB2413.namprd09.prod.outlook.com] From: mailcore::Address:0x60000031bd60 Burke, Ron G <Ron.Burke@fortworthtexas.gov> To: [mailcore::Address:0x6000030[illegible] Morgan, Christopher <Chris.Morgan@fortworthtexas.gov>] Cc: [mailcore::Address:0x6000030dfe0 Birchett, William <William.Birchett@fortworthtexas.gov>] Subject: RE: Door access check X-MS-TNEF-Correlator: X-MS-Exchange-Organization-AuthMechanism: 04 Keywords: Senior Leader Content-Type: multipart/related; boundary="_006_DM5PR0901MB23286F7080F4D98EABEBABFB9EB70DM5PR0901MB2328_"; type="text/html" x-forefront-antispam-report: SFV:SKI;SFS:;DIR:INB;SFP:;SCL:-1;SRVR:DM5PR0901MB2424;H:DM5PR0901MB2328.namprd09.prod.outlook.com;FPR:;SPF:None;LANG:en; X-MS-Exchange-Organization-Network-Message-Id: 5bd5206c-ad38-4971-df9b-08d66d0c5630 MIME-Version: 1.0 Thread-Topic: Door access check X-Microsoft-Antispam-Mailbox-Delivery: ucf:0;jmr:0;ex:0;auth:0;dest:I;ENG:(750119)(520011016)(706158)(944506303)(944626516); X-MS-Exchange-Organization-ComplianceLabelId: 15380a8f-d0e5-4ea9-ae48-a4c2197b024f X-MS-Exchange-Organization-AuthAs: Internal Thread-Index: AdSdUSYKyHOHDpc/S02WHSyKoAfZpgAAcPtQAAAPFRAAAIZCgAAnx1owAD5hOMA= x-ms-publictraffictype: Email X-MS-Exchange-Organization-AuthSource: DM5PR0901MB2328.namprd09.prod.outlook.com Importance: high X-MS-Has-Attach: yes Content-Language: en-US X-Microsoft-Antispam-Message-Info: [illegible] Received: from DM5PR0901MB2424.namprd09.prod.outlook.com (52.132.134.14) by DM5PR0901MB2422.namprd09.prod.outlook.com (52.132.134.11) with Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1471.20 via Mailbox Transport; Fri, 28 Dec 2018 21:35:08 +0000 Accept-Language: en-US X-MS-Exchange-Organization-SCL: -1 X-Microsoft-Exchange-Diagnostics: 1;DM5PR0901MB2422;27:[illegible] X-MS-Exchange-Organization-RecordReviewCfmType: 0 X-Priority: 1 >
Email-Archiver-Version: 384.100

# EXHIBIT O

**From:** Gunn, Kevin B. <Kevin.Gunn@fortworthtexas.gov>
**To:** Wright, Roger A <Roger.Wright@fortworthtexas.gov>, Burke, Ron G
<Ron.Burke@fortworthtexas.gov>, Birchett, William <William.Birchett@fortworthtexas.gov>
**Cc:** Tyree, Cynthia A. <Cynthia.Tyree@fortworthtexas.gov>, Streiffert, Steve
<Steve.Streiffert@fortworthtexas.gov>
**Subject:** Follow-up from previous meetings
**Date:** November 20, 2018 at 11:46:50 AM CST

Attached is the Council Presentation from 2/13 which was derived from Will's risk
based approach presentation.

I agree with all the points below. Much time and effort has been expended because
we have not had this level of consensus up to now to drive and prioritize the efforts.

I add that in order to ensure complete agreement and a consistent message from this
group, **nothing should be communicated inside or outside of the organization of
an information security nature without this group first reviewing and providing
positive confirmation** (with the exception of Cynthia who will provide only the
financial aspects of the program).

This includes all materials for procurements, M&Cs, Internal Audit, External Financial
Audits and compliance audits for the various regulatory programs of the City. Please
ask for clarification if the direction is not clear and also if there are questions about
what is or is not included in the direction.

Kevin


**From:** Wright, Roger A
**Sent:** Tuesday, November 20, 2018 10:44 AM
**To:** Burke, Ron G <Ron.Burke@fortworthtexas.gov>; Birchett, William
<William.Birchett@fortworthtexas.gov>
**Cc:** Gunn, Kevin B. <Kevin.Gunn@fortworthtexas.gov>; Tyree, Cynthia A.
<Cynthia.Tyree@fortworthtexas.gov>; Streiffert, Steve
<Steve.Streiffert@fortworthtexas.gov>
**Subject:** Follow-up from previous meetings


We have had many discussion over the past several weeks in the area of Information
Security as it relates to strategy, audits, tools, processes, and implementations. In
those discussions there have been a few requests for items as well as some gaps in
our understanding of alignment, status and approach. I would like to take this time to
gather what I think we need to help us get on the same page and have a productive
conversation. The intent is to get all the things we have been discussing and other

needed items captured in one place so we can track them here. If I have missed anything or there are any questions, come see me.

Please provide a copy of the following items so we have a common foundation to speak from:

1. Will's multi-year risk based approach to information security presentation
2. Kevin's presentation to council on information security
3. Will's CJIS presentation that was presented to PD

Please create the following so we all see the scope and status the same way:

4. List of all tools in scope, from my perspective at a minimum all the ones purchased over the last two years
    a. Include reason for purchase, date of purchase, dollars budgeted, and dollars spent
5. List of all tools planned for the next two years
    b. Include reason for purchase, planned purchase date and dollars budgeted / planned
6. Provide a matrix of tools to information security area and in that matrix show their current state of completion and planned completion date
    c. Map all tools to their purpose / why we bought them
    d. Map all tools to the IS area like PCI, CJIS, PCI & CJIS, etc
    e. Show current status of implementation
    f. Provide planned completion date
7. Provide planned spend by CJIS, PCI, CJIS & PCI, or other so we can see what we discussed yesterday as to total spend or no need to mitigate because we have to do it for "x" anyway.
    a. This should map to items above. See example of what it might look like.

| CJIS & PCI | 450,000 |
|---|---|
| CJIS | 150,000 |
| PCI | 250,000 |
| Total Spend | 850,000 |

8. Modify the AR5 to focus on what we can do now with a plan to address the remaining.
9. Develop a response to PCI to mitigate what we can now, address the other items we have tools for or can acquire at no costs then take the rest out of scope

Items 4-7 are mostly one deliverable just lined so that we all understand what should be in it.

Cynthia, please pull all expenditures in this space for the past two years so we can

cross reference what we bought with the list provided to ensure we have a complete list but do not wait for her list to get started. Also, I understand that there are several requests to purchase in the pipe right now, please hold off on approving those until we get this mapped out and understood.

Ron/ Will, if you need anything that is in the pipe to be approved right now then come see me with an exp0lanation of what it is and the priority so we can be sure your need gets addressed.

Roger

---

- Council Cybersecurity Presentation 2018-02-13v2.pptx, 6.1 MB

# EXHIBIT P



FORT WORTH

Police Department
Inter-Office Correspondence

**DATE:** December 20, 2018

**TO:** Jesus Chapa
Assistant City Manager

**CC:** David Cooke
City Manager

**FROM:** Joel Fitzgerald, Sr., Ph.D.
Chief of Police

**SUBJECT:** CJIS 2018 Audit Non-Compliance and Remediation

---

**The Audit Finding**

On December 19, 2018, the Fort Worth Police Department was the subject of a Texas Department of Public Safety (DPS) CJIS Compliance audit. The DPS auditor began his compliance checklist and found the third standard/item, point-to-point encryption, out of compliance. The severity of a lack of compliance finding in this area caused the auditor to interrupt any further compliance check/investigation and to call for a meeting with the Chief of Police and other FWPD staff members. The auditor shared several facts during the meeting, including prior audit failures for the same previously identified issue; specifically stating that he received assurances from Fort Worth that the city rectified point-to-point concerns several years ago. He communicated that city employees either, no longer employed with the City, or working in citywide IT capacities intentionally deceived him when providing follow-up responses to his inquiries into the rectification of previous compliance failures. He also stated,

> [t]he City acted unprofessionally and irresponsibly; advising FWPD that (we were) lucky there has not been a (security) breach...if a breach occurred, once it went public that the City of Fort Worth knew the network was not protected and intentionally had not rectified it, it could quite possibly bankrupt the City.

It is also material to the discussion that on July 31, 2015, IT initiated discussions on the segregation of FWPD onto its own network, but regrettably, that project never materialized. As of the date of this IOC, FWPD integration within the City network is expanding. The entire City network runs on fiber that passes through the PD, and the City utilizes Meraki, a routing/security server for storefronts via a cable network outside of the City network; a routing/security server that IT employees know is no longer FIPS 140-2 encryption certified. During subsequent discussions, it became apparent this encryption

covers items relating to Records Management Systems (RMS) and Computer Aided Dispatch (CAD), however this standards also applies to servers that DO NOT connect to CAD and RMS servers/systems.  In short, if any police accessible databases are stored internally on Fort Worth servers or physically on Fort Worth Property that we control access to, the encryption level that exists is sufficient.  Although some software and MDC traffic/data may transmit securely via encryption our current solutions fail to solve the CJIS Compliance issue among locations where the network endpoints are not FIPS compliant (i.e., Meraki).  Since many FWPD databases allow access through external servers, they absolutely require the same level of encryption protections, a level of encryption that does not currently apply.

This problem also potentially effects the CFW Radio System, particularly in the recording function areas specifically the digital handoff from CFW to other municipalities using the CFW Radio System.  This obviously requires immediate investigation, since it poses a legitimate security issue, and it could become a revenue issue, since other local municipalities pay usage/access fees to utilize space on our radio system.

Because of the Auditor's finding, effective immediately there is a prohibition from FWPD obtaining any additional terminal connections to TLETS.  This is significant because it effects a plethora of ongoing and future projects:

- We are prohibited from installing additional Mobile Data Terminals and Computers with CJIS access
- We are prohibited from deploying additional E-Ticket Writers
- We are unable to move forward with the Critical Infrastructure Project with Lockheed, as well as other CIP projects.

**Timeline and Potential Sanctions**

It is my duty to inform you that if this problem is not corrected it is likely this jurisdiction receives an admonishment from the Governor AND lose access to CJIS materials (information on warrants, stolen vehicles, missing persons, etc.), information critical to the mission of a police department that poses a serious threat to the safety of officers and citizens.  Fortunately, a result of this Departments honest and forthright acknowledgement of the validity of the auditor finding, he is willing to suspend any actions that could cripple our ability to receive, transmit and store CJIS related materials, in effect neutering our ability to investigate crimes.  He cannot guarantee an interruption in our service will not occur, but agreed to allow the FWPD, and Municipal Court (if applicable), to immediately remediate failures and to work on the below items before his return (follow up audit) in Jan. 2019.

Since the ability to achieve the technical and digital compliance the auditor requested in this jurisdiction falls outside of the purview of FWPD, we must provide a document by the close of business on Thursday December 20, 2018, that describes how we intend to correct the deficiencies before the Jan. 2019 audit.  Furthermore, the DPS auditor also advised that a March 2019 FBI Audit will follow; a separate but no less important audit of all CJIS

related compliance of ORI's in this jurisdiction for compliance and remediation of any/all problems previously identified.

An additional concern is the continued permission level of person(s) with permanent CJIS disqualifiers who have access to FWPD facilities and servers. The below info, obtained today is an example of such a violation:

**Physical Access Problem**

In July 2018, Police Administration met with IT Management counterparts to discuss the tasks being performed by Police Technology Services in order to determine which tasks would transfer to ITS from FWPD-Police Technology Services. Police management took the list of tasks identified by the surveys given to Technology Services personnel and split them into a "business" or "IT" tasks (some were divided into both categories as they possessed both a "PD-business" and "IT" task). The concern of Police Admin was specifically a bid to manage and maintain control of sensitive or confidential information as it relates to officer personal information, CJIS access, criminal information, and any other databases deemed classified (i.e., Intel/Homeland Security, BOLOS, investigative databases, etc.). FWPD made the submissions of job tasks/categories, but IT related that FWPD conducted its portion of the exercise incorrectly, and stated that tasks could not encompass two categories except in cases where IT identified the task as a "split" responsibility. In the subsequent discussions, I made it abundantly clear that many of the tasks and Police Technology Services personnel with IT abilities should remain with Police Technology Services in order to maintain the confidential or sensitive nature of these systems. I also identified a problem with CJIS disqualified IT employees who had unfettered access to CJIS information and received assurance it would be immediately rectified. After meeting with Kevin Gunn, I had no reason to believe the changes would not occur, but it appears the security of CJIS info has not been a priority for some members of ITS. This is evident in the audit failure as well as governing the provision of physical access to public safety buildings, all of which contain CJIS information.

On December 14, 2018 IT employee Gerald Glenn entered the Police Administration Building at approximately 1800 hours. The employee who reported him became concerned when he used his proxy card to obtain access for a police employee who did not have the same level of access to the Senior Administrative hallway. Upon further investigation, Glenn curiously accessed the facility after-hours on several dates, including a weekend. Police personnel examined his access profile and determined that his access level provided unrestricted access to many secure areas of the Police Administration Building and Training Academy. Several of his visits include the Tactical areas of the Academy, a highly restricted section because it contains specialized equipment utilized by SWAT, specifically, the weapons vault is accessed via keycard and it contains launchers, rifles (including sniper rifle), and pistols. As a result I requested an audit of all equipment and an audit of all ITS employees' physical access via proxy cards. An example of the suspicious access is the below Access Engine List:

**Access Engine**

List of persons at entrances

Date 12/20/2018, 1:28:19PM

Page 1

| Name / Person valid from | Until | Personnel no. | Authorization / Authorization valid from | until | No. of cards / Time model | Direction |
|---|---|---|---|---|---|---|
| **911 East Dr** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 FD Hall Dr** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 Front Dr** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 PD Admn Dr** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 PD Hall Dr** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 PGate** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **911 VGate** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | 911 ALL DRS & GATES (NO TECH) | | 2 | in |
| **Basement Floor** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | RIDGEMONT ALL GATES | | 2 | in |
| **Floor-1a** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | RIDGEMONT ALL GATES | | 2 | in |
| **Floor-1b** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | RIDGEMONT ALL GATES | | 2 | in |
| **Ground Floor** | | | MAC | | | |
| Glenn, Gerald 06/17/2008 11:00PM | | 100501 | RIDGEMONT ALL GATES | | 2 | in |
| **PD TACT D1** | | | MAC | | | |

## Virtual Access Problems

Mark P. Deboer is a FW IT employee who has a permanent disqualifier from accessing CJIS info. He serves as a Senior Manager for IT Solutions overseeing the CAD support team, the Database Support Team, applications and GIS; he has administrative privileges for virtually all CFW (including FWPD) desktops and laptops. In order to confirm his access we checked a Police IT employee laptop and the desktop of a Sergeant who has IAD access privileges and found that the below tech_admin group (See Deboer, Mark P Properties) was located within the administrative group on those sampled devices. Deboer, a person previously identified as placing the city at-risk of sanctions and the potential loss of CJIS access continuously violates CJIS rules.



Deboer, Mark P Properties
Sessions
Remote control
Remote Desktop Services Profile
COM+
General
Address
Account
Profile
Telephones
Delegation
Organization
Member Of
Password Replication
Environment
Member of:
Name
Active Directory Domain Services Fo
SQL_ITSDatabaseDevelopers
ci.fort-worth.tx.us/CFW Service Accc
SQL_SSRS_PlatDirectoryRe...
ci.fort-worth.tx.us/CFW Service Accc
StormWater_Video_MOD
ci.fort-worth.tx.us/CFW Users/Transp
Sympro_Full_Users
ci.fort-worth.tx.us/CFW Groups/Distri
TASKE01_Administrators
ci.fort-worth.tx.us/CFW Service Accc
Tech_Admin
ci.fort-worth.tx.us/Users
TRMS_Admins
ci.fort-worth.tx.us/CFW Users/^CFW
TRMS_Users
ci.fort-worth.tx.us/CFW Users/^CFW
Add...
Remove
Primary group:
Domain Users
Set Primary Group
There is no need to change Primary group unless you have Macintosh clients or POSIX-compliant applications.
OK
Cancel
Apply
Help
Tech_Admin Properties
General
Members
Member Of
Managed By
Members:
Name
Active Directory Domain Services Folder
Butt, Qaisar A
ci.fort-worth.tx.us/CFW Users/IT Solutions
Campbell, Sh...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Carbajal, Hug...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Chouinard, Br...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Citizen, Kevin
ci.fort-worth.tx.us/CFW Users/IT Solutions
D'Aquin, Jona...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Davis, Kenton...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Deboer, Mark P
ci.fort-worth.tx.us/CFW Users/IT Solutions
Delgado, Jos...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Dessommes, ...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Faggett, Erish
ci.fort-worth.tx.us/Disabled Accounts/Dont Touc
Feuerborn, Th...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Fingers, Harvi...
ci.fort-worth.tx.us/CFW Users/IT Solutions
Add...
Remove
OK
Cancel
Apply

It is imperative that IT does not ignore these findings and/or fail to enact immediate remediation, because per CJIS Security Policy, the penalty for improper access of CJIS materials can also include state and federal criminal penalties as per U.S. Code Title 28 Chapter I Part 20 CFR. As a law enforcement agency, we have a duty to comply with CJIS policy and protect CJIS information. If access to CJIS information continues to be jeopardized by non-compliance or inattentiveness to standards repeatedly brought to the attention of IT by FWPD Staff and through our MCA, we shall strictly adhere to the law, up to an including filing charges against persons not authorized to access CJIS info who are discovered in violation of the law.

**Items Requiring Remediation**

The following lists examples of additional items requiring remediation before the January 2019 DPS audit:

Previous CJIS Audit encryption findings. All findings letters are attached.

- 2013 Fort Worth Police Department CJIS report from DPS did not ask any questions regarding encryption.
    - Alan Girton was the LASO at the time.
    - Amber McCright Justice was the TAC at the time.
    - DC Robertson was over Communications at the time.
- 2013 Fort Worth Police Department CJIS report from FBI addresses encryption in 4.8 and indicates Fort Worth Police Department was <u>out of compliance due to leased fiber from PD to DR site</u>.
    - Alan Girton was the LASO at the time.
        - Sean Malone was responsible for correcting this deficiency.
        - While the majority of documentation regarding this audit's remediation has disappeared from the SharePoint site, I was able to find a spreadsheet I saved elsewhere dated 08/03/15, which had noted the following; "Unencrypted transmission of CJI over public facilities. Encryption of CAD backups between PSAP and AltPSAP." The spreadsheet indicates it was completed by Sean Malone in December 2013.
    - Amber McCright Justice was the TAC at the time.
    - DC Robertson was over Communications at the time.
    - No other evidence of remediation was found.
- 2015 Fort Worth Police Department CJIS report from DPS addresses encryption in 5.8 (data at rest) and 5.10.1.2 (data in motion) and indicates Fort Worth Police Department was <u>in compliance</u>. <u>The noted response on 5.10.1.2 only address https website encryption but does not include network links.</u>
    - Alan Girton was the LASO at the time.
        - While the majority of documentation regarding this audit's remediation has disappeared from the SharePoint site, I was able to find a spreadsheet I saved elsewhere dated 08/03/15, which had noted the following; "FIPS 140-2 Certificates for Encryption."

Assigned to Carbajal/Vandever and the documentation was reported to be uploaded to the CJIS SharePoint August 2015.
  - Heather Herriage was the TAC at the time.
  - DC Kamper was over Communications at the time.
- 2016 Fort Worth Municipal Court CJIS report from FBI addresses encryption in 4.10 and indicates Fort Worth Municipal Court was out of compliance. Notes indicated "Pending receipt of FIPS 140-2 certificates for connectivity to Jail and Southwest Municipal Court. Additionally for remote access by TriTech and City IT for maintenance."
  - Alan Girton was the LASO at the time.
  - Chris Morgan was the TAC at the time.
  - Theresa Ewing was over Municipal Courts at the time.
  - TriTech switched to Bomgar for remote access which is compliant. No other evidence of remediation was found.

**Management Control Agreement**

As part of CJIS requirements, FWPD has a Management Control Agreement with CFW IT. This agreement outlines the duties and responsibilities of IT. In part, the agreement states, "Whereas the non-criminal justice agency (IT) manages the associated computer and/or equipment and personnel that provide the criminal justice agencies with access to the Texas Law Enforcement Telecommunications Systems (TLETS)." The MCA also states, "Whereas the Department of Public Safety defines management control as the authority and responsibility to enforce Security Control as herein defined, therefore be it resolved that this agreement hereby places the technical services division (IT) under the management control, as herein defined, of the criminal justice agency (FWPD)." Furthermore, the MCA states that IT must abide by all rules of Texas and the FBI CJIS policy and that controls must be implemented under FWPD's supervision ensuring this. Lastly, "The non-criminal justice agency (IT) agrees to cooperate with the criminal justice agency (FWPD) in the implementation of this agreement, and to accomplish the directives of the criminal justice agency under the provisions of this agreement."

IT has not complied with the MCA discussed above. In May 2018, Will Birchett CFW-LASO conducted a preliminary audit of our systems. During this audit, he discovered numerous issues that required correction prior to the current CJIS audit that he reported to IT and PD leaders. On May 22, 2018, IT presented a remediation plan that described how to rectify each CJIS issue (illustrated in IT Remediation Breakdown). This did not include the encryption issue discovered during the December 19, 2018 audit. While reviewing documents on December 19, 2018 pursuant to this audit, FWPD found a disturbing document related to the preliminary audit findings presented by Mr. Birchett. In this document, IT management ordered the following:

> (Mr. Birchett) is no longer allowed to correspond outside of his department without prior authorization from IT leadership, nor is he authorized to make any purchases.

In effect, the LASO, a Senior Manager in IT responsible for critical PD related IT security issues was no longer allowed to communicate with the PD on CJIS issues or work to rectify issues without prior approval.  This direction is in complete conflict with the MCA between FWPD and IT and DPS and the FBI may interpret it as a means to circumvent CJIS rules by silencing the LASO.

IT Remediation Breakdown: FY20 Capital request submitted for $800K to purchase the below items (pending IT approval)

| CJIS Section | Solution | Capital Project Costs | O&M | PD cost (Cap) @ 2000 users | PD Cost (O&M) @ 2000 users | Status (as of 12/19/18) |
|---|---|---|---|---|---|---|
| 5.4.1.1 and 5.4.6 – Logging | Splunk – log management | $280,000 (sub) | $280,000 | $100,000 | $100,000 | Has spent $72,000 per year for annual subscription. Need increased license for more data. |
| 5.3.2.1 and 5.3.2.2 Remediation and Incident Response | Demisto – Orchestration, Evidence | $150,000 (sub) | $150,000 | $40,000 | $40,000 | DHS grant will fund $100K in January |
| 5.5.1 and 5.5.2 – Identity 5.5.2.3-.6 5.6.2.1.2 – Access Control | Okta – Identity, Access Mgmt | $345,000 (sub) | $345,000 | $100,000 | $100,000 | Purchased August with FY 2018 capital |
| 5.3.2.1 and 5.3.2.2 Remediation and Incident Response | Netwrix – Permission/Change Audit | $290,000 (1 time) | $70,000 | $175,000 | $35,000 | Bought subscription, has annual fee. Did not buy the data discovery which is $60K (this makes system look for CJI at rest and who has access etc). |
| 5.10.1 – Data in motion | Mimecast – Email Security | $200,000 (sub) | $200,000 | $50,000 | $50,000 | Nothing done |
| 5.3.2.1 and 5.3.2.2 Remediation and Incident Response | Crowdstrike – Endpoint Security | $150,000 (FY18) | $150,000 | $38,000 | $38,000 | Purchased May 2018 |
| | | | | | | |
| 5.10.1 – Data in Motion | Web Proxy | $113,000 | $113,000 | $90,400 | $90,400 | Nothing done; quotes are higher than planned at $113K |
| 5.13.2 and 5.13.7.2 Mobile Device | VMWare Workspace One – MDM | $50 per user (sub) | $50 per user (sub) | $50 per user (sub) | $50 per user (sub) | 265 mobile phones currently enrolled. As new phones are issued, they are enrolled in MDM (AirWatch). Up to 150 new E-Ticket writers will be enrolled as well. |
| 5.9.1.3 Processing facility | Cage in Data Center | $10,000 | $0 | $10,000 | $0 | No longer needed due to restricted access to data center. |
| 5.3.2.1 and 5.3.2.2 Remediation and Incident Response | Wazuh – Host IDS | $0 | $0 | $0 | $0 | Nothing done. Planned to queue January '19. |
| 5.10.3.2 – Virtualization | WMWare physical/logical separation | $200,000 | $200,000 | $60,000 | $60,000 | Network based segmentation instead of physical at $200K |
| 5.13.1.1 – Wireless | Aruba WAP Security | $0 | $0 | $0 | $0 | Nothing done |
| 5.10.1.2.1 – Encryption | Need to identify the solution | ? | ? | ? | ? | Issue identified 12/19/18 during audit. |

In closing, the DPS Auditor returns to complete the CJIS audit in January 2019, and it is their express expectation that Fort Worth is found in complete compliance. This includes the major encryption issue discovered as the third checklist item AND all issues noted in our preliminary findings. As mentioned previously, failure to meet the minimum standards could result in serious administrative and criminal sanctions. Additionally, full disclosure and cooperation with DPS is demanded from this point forward. Lastly, the FBI will conduct an audit in March 2019, and Fort Worth should be prepared for an extremely intensive probing of our CJIS compliance.

# EXHIBIT Q

COMMENT
Fire the Assistant Director Roger Wright.

It's time some leaders are let go, as their leadership (or lack of leadership) is causing a lack of morale in teams. IT Application division is one example. AD Roger Wright needs to be removed in my opinion. We have a high turn over rate, and have lost some of the best developers in our team.

The Management in ITS is not trusted by staff.  Roger Wright creates a hostile work environment at times. Most IT Solutions employees are not comfortable when he is around.  He could be a  good Manager if mentored by the right people.  Most are afraid to complain.

Upper management, especially the city manager needs to sit down and chat with members of Application Division team members and everyone who works under the department that Mr Roger Wright oversees. Employees working under Mr. Roger Wright have a very poor morale due to poor leadership. If everything continues the way it is, everyone will either leave the city or move to a different department.

Fix Mr Roger Wright's department

For my department, our AD Roger Wright is condescending, rude, abrasive, vindictive, dishonest, and untrustworthy.  He has created a hostile work environment that is toxic waste boiling over. At his position he should be held at the highest levels of accountability.

In short the department has great management, but terrible leadership. The executives in particular have no idea how to lead people and instead resort to coercive practices to accomplish objectives. Transactional and directional styles of leadership are no longer appropriate for a department of knowledge workers. At the root of this problem lies a hierarchical mindset of "if I want your opinion, I'll tell you what it is" instead of "lets figure this out together". Often this mindset is constrained by the idea that there is only one "right way" of doing things. This creates an environment that is particularly toxic to women and millennials. We must acknowledge that no one person holds a monopoly on good ideas and that the best ideas are a refinement of individual expressions condensed into a unit response. For this to work, participative management styles and a learning orientation must be cultivated. Now I must be specific in this regard: Steve Streiffert and Roger Wright lack the leadership ability to lead a department of knowledge workers into the next decade. I would prefer to not have to say these things, but there is no other mechanism by which they will be held accountable otherwise. Aside from toxic personality traits (possessing the unfortunate combination of gigantic and yet, fragile egos), they are in executive leadership positions without actually having any leadership ability Their Leadership style can be characterized by: ◙ Empire builder - Hoards resources and underutilizes talent ◙ Tyrannical - Creates a tense environment that suppresses people's thinking and capability ◙ Know-it-all - Gives directives that showcase how much they know and how little anyone knows ◙ Omnipotent Decider - Makes centralized, abrupt decisions that confuse the organization without involving other management and at every point, seeks to suppress debate ◙ Micro Manager - Drives results through personal involvement, not allowing any solution to contain the "DNA" of those who performed the work This is the exact opposite of the kind of leadership the department needs: ◙ Talent magnet - Attracts talented people and uses them at their highest point of contribution ◙ Liberator - Creates an intense environment that requires people's best thinking and work ◙ Challenger/Delegator - Defines an opportunities that causes people to stretch ◙ Debate maker - Drives sound decisions through rigorous debate ◙ Investor - Gives people the ownership of results and invests in their success The former give answers, the latter ask hard questions. The former: uses, blames, tells, decides, and controls. The latter: develops, explores, challenges, consults, supports. These are the kind of people that if given a chance to read these comments, I would fully expect them to retaliate. Through past experience, I believe that they lack the humility to accept criticism because in their hubris, they believe that they have reached a professional level where input from subordinates is beneath them. In short, they are a cancer to this organization and will drive away creative talent.

If I could change something, I would immediately let Roger Wright go and hire a replacement who can change things around and empowers his team. Someone who can hold his managers accountable when they cross the boundaries of professionalism.

Stop allowing Roger Wright to ruin lives and create extreme stress for nothing.

This is not about City Management but with our Director and with the specific assistant director Roger Wright. Roger has been a terrible influence on the department as a whole. He is not respected because he shows no respect. He's says terrible things about staff, including his peer AD Ron Burke, as well as customers from other departments. Other than Courts, other departments can't stand him. He rules by fear, rarely if ever gives praise, and condemns without consideration. Due to fear, he's causing everyone to have a terrible work life. ADs most valuable trait involves strong relationship building. Roger has destroyed almost all his relationships. His managers are wanting to leave and the rest of us would leave if there were chances to do so, and even some employees like Patrick Richards have committed suicide because of him. You should talk to Patrick's team, his boss, and his fiance to learn the truth. The Director Kevin has done nothing to help with Roger's destructiveness, and he's ignored his other AD, Ron Burke, who Roger bullies like a kid. When we get things done here, we achieve results not because of Roger, but in spite of him. And if he were gone, we'd see improvements in many

Replace the Assistant Director Roger Wright with someone who is honest and can lead.

Would stop wasting resources in the ITS department. Correct mistake of consolidating staff into a department that has multiple problems including low morale and management issues   (Including AD Roger Wright and his disrespectful treatment of staff. This AD runs his unit with fear and distrust. Mark DeBoer is another manger that needs to be investigated)    DeBoer is a senior manager that does mostly technical work and refuses to share his knowledge of systems; he keeps ITS technical staff from working/learning systems and dependent on his expertise. Instead of sharing his knowledge, he works as many tickets as other lower level staff, he is the most expensive technical employee in the city because instead of performing senior manager work, he does technical work that other people need to do. ITS Senior management is aware of this situation and still allows this waste of taxpayers money. This situation sets the tone for a culture of "knowledge concealment" and distrust amongst technical staff about sharing any information. This is just a sample of many more issues in the ITS department that need to be addressed and the opportunity to express them is important and appreciated.

IT upper management is horrible.  Kevin is rarely around and has to be begged to have any involvement with staff.  Roger bullies everyone, including his peers.  Ron has been a great AD as he has kept his teams informed and engaged.  He takes a hands on approach, provides strategies and goals, joins meetings, shows respect even in disagreements, and really seems to care about the success of his team.  This is evidenced in meetings and in emails.  Roger is the exact opposite.  He could care less about his staff, shows disrespect by default and just wants everyone to listen to him, delegates all strategy and goal responsibilities to his managers, rarely ever joins important meetings, and based on his provided performance reviews, doesn't care about anyone's success other than his own.  Even worse, Roger doesn't seem to know anything about the technologies he is over, yet Ron seems to know everything about his areas.  In ITS, it is critical that managers understand their technologies.  Steve seems to be doing well with his team but he's rarely seen because the way the department is organized, his teams don't have much overlap with services or operations.  This is all ironic since the largest team, due to IT consolidation, is under the least effective and worst performing AD, Roger.  If Roger could fix one thing, it would be his ability to keep strong relationships.  Relationships build trust.  Trust builds integrity and respect.  Respect creates strong, effective teams by making leadership be a forward momentum force instead of a constant resistance which is caused by lack of respect.  Fear is not a strategy, but that's all Roger relies on anymore.  So

Roger has brought bad culture and is destroying the team.  Replace him, please.

I don't work directly for him, but Roger, one of our ADs, is about as bad as they come. I've seen religious and gender discrimination against an employee (reported and investigated by HR and she's now on a different team due to the harassment). The meetings I've been in, I've seen a dominance from him in wanting to talk over people which is weird since you'd think he'd want ideas. But worst of all is the criticism with whatever he pays attention to. My managers seem to always be panicked about how Roger feels, whether he's angry, or if he's changed his mind. This seems to be causing tremendous stress that gets passed down to the rest of us. I can't remember the last time Roger ever told us thanks or job well done. My reviews with my manager seem to be good overall, but it just seems like Roger doesn't like us or just plain hates us. It'd be nice if he did occasional group meetings about goals and strategies like what Ron does. Ron's team seems very satisfied, happy, and getting results. No stress. With Roger, there's no informative meetings about his vision, I can't tell if we are doing what he wants, and the few times I've done something directly for him, I feel like I'm blamed for having to fix the problem. I try to explain things to him but he doesn't seem to know anything about VDI or anything else I do. I feel like he's going to fire me, and my teammates feel the same way. I also have seen where the PMs who answer to Roger are very unhappy, the Apps teams are unhappy, and my team is unhappy. Our management is fine, great sometimes, and I feel like they have to go a long way to fix the damage caused by Roger. I hope Andrew doesn't quit, especially after Patrick died, but I know he's under terrible stress. He's been so good to us.

Maybe fix Roger so he's not a problem? Give him training to be an AD?

Departmental leadership is poor. Kevin walks around like the prime minister. Nose in air and clearly does not have interest in the employees working for him. He has allowed Roger to create an unhealthy, unethical and toxic work environment that belittles the work of staff while creating undue stress.

The IT department seems to have issues between ADs. Our boss Ron seems to want to do the right thing as a team, but his peer Roger seems to not be interested in teamwork. In particular, there seems to be a lack of respect, probably for our entire team. I am thankful every day that I don't have to work on Roger's team, and I'd rather quit than have to. He attacks people too much and his team seems mostly in the dark on what each other are doing, including the senior managers. I'm pretty sure Patrick's death had something to do with Roger's abuse. I'm thankful every day we have Ron as our boss.

My dept is a toxic workplace. Management is punitive and threatening, and many employees here believe that they were partly responsible for one of our staff hanging himself. Doing a good job doesn't stop you from being treated disrespectfully. For example, I know for a fact that my managers trash talk me behind my back. If they have a problem with how I'm doing my job, they should address it directly with me. Their behavior is unprofessional and childish. Interestingly, my reviews and raises are good, which makes you think that they know that what they are saying behind my back is a crock. Also, the constant emphasis on arbitrary deadlines causes unnecessary stress, as management flogs the employees repeatedly for missing deadlines they had no input on. Management by fear is a poor strategy - you should fire these fools and get some competent

| For the City to work as one for their employees. Make the employees recognizable for their jobs well done, stop the favoritism. Stop the discrimination, no employee(s) should ever feel this way from their co-workers and or their superiors, never. Give reclassifications/pay increases to those that deserve it, stop overlooking those employees that do deserve this. More training so we can advance in our job and get better evaluations. |
|---|
| |
| Some employees don't like one of our AD's |
| |

| |
|---|
| Get divisions and departments to work together as a team. Promote honesty and respect throughout the city. Appreciate employees for the work that they do. Reward good work. Reward good Management. Coach and menor when needed. Stop the bully mentality against employees. |
| |
| Staff in our dept rarely interact, or feel comfortable with assistant directors (well, at least one) and our director rarely interacts with us directly. One in particular talks down to employees. |
| |
| Install leaders with vision, communication and people skills, remove toxic bullies that lead by intimidation. |
| |
| ITS has an AD that is a narcissistic bully and everyone knows it. He stresses out his people and the environment is horrible under him. After a suicide, something should have been done. Just LOOK at the stress level! |
| |
| Audit the ITS department to asses employee morale, mgmt. behavior and departmental culture asap |
| |
| Create a NO Bullying in the workplace policy. A see something say something policy. ITS Managers often embarrass employees in meetings. An employee should be able to voice their concern without being relatilated against. The performance reviews are often used to retailiate against an employee. ITS Managers makes jokes about other employees in the workplace. ITS managers often challenged employees in meetings with other |
| |
| 360 performance reviews must be implemented before any other changes are made to the current performance assessment structure. There is a large amount of toxic leadership--especially at the executive level--that is never held accountable. |
| |
| We had one team member in IT team commit sucide and another person moved to a different department because she was targeted for her religion. Absolutely no actions were taken against the leaders who allowed bullying, harassment, and discrimination. We need some accountability here. |
| |
| ITS has a hostile work environment. |
| |
| Improve employee morale with zero tolerance to disrespect and bullying behaviors in the work place. |
| |
| Have higher expectations out of underperforming IT ADs with poor relationships with others. |
| |
| If an IT manager commits suicide at work, that should be looked at |